# Court of Appeals, State of Michigan

## ORDER

People of MI v Jaqavice Deonnell Grace

Docket No.    322653

LC No.       14-039775-FC

Patrick M. Meter
Presiding Judge

Stephen L. Borrello

Jane M. Beckering
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued November 17, 2015 is hereby VACATED. A new opinion is attached to this order.

METER, P.J., would deny the motion for reconsideration.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JAN 1 4 2016

Date

Chief Clerk

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAQAVICE DEONNELL GRACE,

      Defendant-Appellant.

UNPUBLISHED
January 14, 2016

No. 322653
Saginaw Circuit Court
LC No. 14-039775-FC

ON RECONSIDERATION

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant of unlawful imprisonment, MCL 750.349b, felonious assault, MCL 750.82, and interference with electronic communications, MCL 750.540. He was acquitted of kidnapping, MCL 750.349, first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (aggravating circumstance of armed with a weapon), and an additional charge of felonious assault, MCL 750.82. Defendant was sentenced to 86 months to 15 years' for unlawful imprisonment, 2 to 4 years' for felonious assault, and 1 to 2 years' for interference with electronic communications. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm in part, vacate in part and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The charges against defendant arose from an incident occurring in February 2014 involving two female high school students. Defendant was also a high school student at the time. Defendant and one of the alleged victims met on a social website. She, along with a friend, picked defendant up in Saginaw, Michigan and attended a house party. After leaving the party, the two victims, one driving and the other riding in the front passenger seat, began driving defendant to an address that he provided. On the way, defendant allegedly started fondling the victim in the passenger seat. The victims testified at trial that defendant brandished a gun, took the driver's cellphone, and forced the driver to pull over and the passenger to enter the backseat, where he sexually assaulted her. As previously stated, defendant was acquitted of the crimes allegedly committed against the passenger, but was convicted of the crimes committed against the driver.

-1-

At sentencing, defense counsel argued that because defendant possessed a starter pistol when convicted under MCL 750.82(1) and MCL 750.349(1)(a), a directed verdict should have been entered with respect to the felonious assault and unlawful imprisonment charges. The trial court stated that this issue should have been brought before the jury's deliberations, and nevertheless, a starter pistol can be used to strike someone, cause hearing damage, or physical harm due to the pistol spark. The trial court reasoned that the pistol, not having bullets, will not kill someone, but there are many different ways that it could be used as a weapon, and after hearing the proper instructions, the jury decided that the pistol was used in that manner. Defendant was sentenced as stated above. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

### A. FELONIOUS ASSAULT

Defendant argues that the evidence was insufficient to convict him of felonious assault because the indictment was based on his use of a starter pistol. "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *People v Patterson*, 428 Mich 502, 525; 410 NW2d 733(1987) (internal quotation marks and citation omitted). In viewing "the evidence in a light most favorable to the prosecutor," *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006), this Court "'must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.'" *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992), quoting *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979).

On appeal, defendant first argues that his conviction for felonious assault should be vacated based on our Supreme Court's decision in *People v Stevens*, 409 Mich 564; 297 NW2d 120 (1980). Defendant was convicted of violating MCL 750.82(1) which states, as it did at the time of our Supreme Court's decision in *Stevens*:

> (1) Except as provided in subsection (2), a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $ 2,000.00, or both.

Under the felonious assault statute, MCL 750.82(1), there are weapons that "carry their dangerous character because so designed and are, when employed, per se, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose." *People v Goolsby*, 284 Mich 375, 378; 279 NW 867 (1938). See *People v Vaines*, 310 Mich 500, 505-506; 17 NW2d 729 (1945). "The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous." *Goolsby*, 284 Mich at 378; see also *People v Hale*, 96 Mich App 343; 292 NW2d 204 (1980), vacated on other grounds, 409 Mich 937 (1980) (holding that a shoe could supply the dangerous weapon element of felonious assault). Whether such instrumentality was employed in an assault as a "dangerous weapon" is generally a question

of fact for the jury. See *People v McCadney*, 111 Mich App 545, 550; 315 NW2d 175 (1981). Weapons that are "per se, deadly" include "a gun, revolver, pistol, knife, iron bar, club, brass knuckles." MCL 750.82(1).

In this case, a starter pistol is at issue, and several statutes define "pistol" by referencing "firearm." See *Stevens*, 409 Mich at 567 n 3. The term "firearm" includes "'any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion . . . .'" *Id*. at 567, quoting MCL 8.3t. See also MCL 750.222(d). *Stevens* addressed whether a starter pistol that had a "barrel bored out, containing eight live .22 caliber shells, but with the firing pin filed down to the point that it would not be possible to fire the pistol" fell within the scope of the felonious assault statute. *Stevens*, 409 Mich at 566.

In *Stevens*, our Supreme Court held, in relevant part:

> In this case, there is nothing to suggest a basis for concluding that the starter pistol was a "dangerous weapon" other than the theory that it was a "gun, revolver, [or] pistol." While the statutes do not define the terms "gun" or "revolver", we can see no other plausible interpretation of that series of words than that it applies to assaults with firearms. The term "firearm" is defined by law:
>
> "The word 'firearm', except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion." MCL 8.3t [].
>
> The starter pistol in this case was not capable of propelling a dangerous projectile, and thus its use in an assault did not violate MCL 750.82 []. [*Stevens*, 409 Mich at 567 (footnotes omitted).]

Contrary to defendant's arguments on appeal, we do not read *Stevens* to stand for the proposition that there exists a bright-line rule that a starter pistol can *never* constitute a "dangerous weapon" pursuant to MCL 750.82(1). Nor do we concur with the state's argument that *Stevens* is limited only to cases where the parties stipulate in advance of trial that the weapon is incapable of propelling a projectile. As evidenced by the afore-mentioned passage in *Stevens*, when rendering its analysis as to whether the starter pistol constituted a dangerous weapon within the meaning of MCL 750.82(1), our Supreme Court gave no consideration to the stipulation of fact relied on by the state to distinguish *Stevens* from this case. In contrast to the arguments set forth by the parties on this issue, we hold that *Stevens* stands for the proposition that the inquiry into whether the weapon that forms the basis for a conviction under the MCL 750.82(1) is simple: in the absence of proof that the weapon was used in any manner other than

to point at the intended victim, *Stevens* requires proof beyond a reasonable doubt that the weapon at issue is "capable of propelling a dangerous projectile."[1]

We begin our examination of the record to determine if defendant used the starter pistol in a manner which, even if it were incapable of projecting a dangerous projectile, could transform it into a dangerous weapon. The state argues that the trial court was correct in its assertions at sentencing that the starter pistol could be construed as an "other dangerous weapon" for purposes of the felonious assault statute because it could be used to strike a person, cause hearing damage, or physical harm from a pistol spark. However, the state has failed to produce any evidence from the record to support its assertion that defendant used the starter pistol in the manner put forth by the trial court. Additionally, our review of the record reveals no evidence that defendant used the starter pistol to strike someone or to cause hearing damage or physical damage from a pistol spark. Rather, the record reveals that defendant's alleged use of the starter pistol indicates intent to use it as a firearm, not as a blunt metal object. Our Supreme Court in *Stevens* similarly noted that there was "no claim that the defendant attempted or appeared to use the starter pistol as a striking weapon." *Id*. at 567 n 2.[2] Consequently, there was insufficient evidence presented at trial to conclude that defendant used a dangerous weapon as an instrumentality adapted to inflict serious injury to effectuate an assault against the driver of the vehicle.

Having found no evidence to substantiate the trial court's findings that defendant used the starter pistol in any manner such that it would constitute an "other dangerous weapon," we next turn to the issue of whether there was legally sufficient evidence introduced at trial to show that

---

[1] Relative to the inquiry of whether the weapon is capable of propelling a projectile, the parties have erroneously conflated this inquiry with an inquiry into the operability of the weapon as well as inquiries into whether the weapon was loaded or unloaded. To make clear, *Stevens* confined the inquiry under MCL 750.82(1) to whether the weapon is capable of firing a projectile. *Stevens* makes no mention of whether the weapon must be operable, nor does it mention any inquiry into whether the weapon was loaded. Thus, this attempt, particularly by the state, to expand the inquiry set forth in *Stevens* inevitably leads to erroneous conclusions of law as to the inquiry to be conducted when ascertaining what constitutes a dangerous weapon under MCL 750.82(1). Consequently, we need not address the erroneous arguments advanced by the state's reliance on this Court's opinion in *People v Prather*, 121 Mich App 324; 328 NW2d 556 (1982).

[2] Furthermore, the trial court erred when, in response to a question from the jury as to what constituted "assaulted" it responded, "And once again, it's a dangerous weapon or an article fashioned or used in a manner to lead somebody to reasonably believe it to be a dangerous weapon." *Stevens* expressly refutes such a definition in its holding that: "[t]he victim's reasonable apprehension can establish the element of an assault in a felonious assault prosecution under MCL 750.82 . . . However, those cases provide no authority for the conclusion that the victim's apprehension of an object can transform it into a 'dangerous weapon.'" *Stevens*, 409 Mich at 567. Hence, there is no legal authority for the trial court's instruction that the victim's apprehension of an object can transform it into a dangerous weapon.

the starter pistol was capable of propelling a dangerous projectile, thereby rendering it a "dangerous weapon" for purposes of MCL 750.82(1).

The warrant and felony information in this case provided that the charge of felonious assault was predicated on defendant's use of a starter pistol against the victim. The starter pistol was admitted into evidence as Exhibit 3, and one of the victims confirmed that Exhibit 3 was the instrument that defendant used on the night of the alleged assault. At trial, defendant's grandmother testified that the pistol was her father's, which she kept in a lockbox under her bed. When defendant's grandmother was asked whether she thought that it was a "real gun with bullets," she answered, "no." Michigan State Police Officer Clint Korpalski testified that while .22 caliber ammunition was found in the grandmother's home, in response to a question from defense counsel, Officer Korpalski seemingly agreed with counsel's assertion that there was something about the construction of the starter pistol which would prevent it from firing a projectile. Though Officer Korpalski later testified that he could not say whether .22 caliber ammunition could fit inside of the weapon, he never stated that the weapon was capable of propelling a dangerous projectile. Additionally, Officer Donald Pisha testified that the weapon was a "starter pistol," and he did not believe the starter pistol was capable of shooting ammunition.

Thus, our review of the evidence, viewed in the light most favorable to the state, leads us to conclude that the state failed to meet its burden of proof that the starter pistol was used as a dangerous weapon for purposes of MCL 750.82(1). Because the state failed to meet its burden of proof that the weapon used constituted a dangerous weapon as stated in MCL 750.82(1), and pursuant to our Supreme Court's decision in *Stevens*, 409 Mich at 567, we vacate defendant's conviction of felonious assault.[3]

## B. UNLAWFUL IMPRISONMENT

Defendant next argues that there was insufficient evidence to sustain his conviction for unlawful imprisonment. The unlawful imprisonment statute, MCL 750.349b, states in relevant part as follows:

(1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

(a) The person is restrained *by means of a weapon or dangerous instrument*.

(b) The restrained person was secretly confined.

---

[3] Though not binding, we note this Court reached a similar result in *People v Geibig*, unpublished opinion of the Court of Appeals, issued June 14, 1996 (Docket No. 184993).

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony. [Emphasis added.]

The jury was instructed as to MCL 750.349b(1) subsections (a) and (c). Because defendant was acquitted of the prerequisite—i.e. CSC-I— necessary to sustain a conviction under subsection (c), we direct our analysis solely to subsection (a).

On this issue, defendant's arguments on appeal are limited to asking this Court to conclude that the starter pistol was "not a weapon or dangerous weapon." Defendant makes no citations to this argument, rather leaving it to this Court to develop the argument for him. Typically, the failure of counsel to provide authority for their position renders the argument abandoned. See *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2008) (stating that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority") (citation and quotation marks omitted).

However, in order to fully adjudicate the issues before this Court, we will address whether the starter pistol constitutes a "weapon or dangerous instrument" within the confines of MCL 750.349b(1)(a).

MCL 750.349b(1)(a) does not define what comprises a "weapon or dangerous instrument." Hence, by the Legislature not expressly defining the language "weapon or dangerous instrument," those words are open to more than one reasonable meaning. *People v Gardner*, 482 Mich 41, 50 n 12; 753 NW2d 78 (2008). Therefore, we construe the statute to give effect to the Legislature's intent. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). "Unless they are otherwise defined in the statute or are terms of art or technical words, we assign the words of a statute their plain and ordinary meanings." *People v Haynes*, 281 Mich App 27, 29; 760 NW2d 283 (2008).

Recently, in *People v Ackah-Essien*, ___ Mich App ___; ___NW2d ___ (2015), this Court defined the term "weapon" for purposes of MCL 750.226 as "something (as a club, knife or gun) used to injure, defeat or destroy." Slip op. at 6 (quotation marks omitted). It is therefore important to note that contrary to the implications set forth in defendant's brief on appeal, the analysis employed pursuant to *Stevens*, 409 Mich at 564 is inapplicable to MCL 750.349b. Unlike MCL 750.82, MCL 750.349b does not require proof that defendant used a "*dangerous* weapon." Rather, conviction under MCL 750.349b(1)(a) merely requires proof beyond a reasonable doubt that the defendant used "*a weapon*" to restrain another person.

The distinction between a "dangerous weapon" and "a weapon" is significant because "[i]t is well known that a term can be defined in a number of different ways; therefore, when interpreting a statute, this Court is to determine the most pertinent definition of a word in light of its context." *People v Hershey (On Remand)*, 303 Mich App 330, 339; 844 NW2d 127 (2013) (citation and internal quotation marks omitted). Additionally, the Legislature is "presumed to know of and legislate in harmony with existing laws." *People v Cash*, 419 Mich 230, 241; 351 NW2d 822 (1984) (citation omitted). Therefore, to resolve whether the starter pistol constituted a weapon, we turn to the evidence produced at trial to determine if the starter pistol was

something defendant used to "injure, defeat or destroy" the victim. *Achah-Essien*, ___ Mich App at ___; slip op at 6.

Testimony of the driver reveals that defendant pulled out the starter pistol, pointed it at her and ordered her to "pull the car over." Next, defendant pointed the starter pistol at her, ordered her to turn around so that she was facing the front while he ordered the other victim into the back seat. Testimony of the driver also revealed that defendant pointed the starter pistol at her when he took her cell phone.[4] The driver further testified that defendant was pulling the hammer back on the starter pistol, which she presumed was intended to frighten her. From this record evidence, we conclude that the starter pistol constituted a weapon within the meaning of MCL 750.349b(1)(a). Defendant used the starter pistol as a means to prevent the driver from leaving the car and in doing so he defeated any intention the driver had of assisting her friend during the alleged sexual assault. *Achah-Essien*, ___Mich App at ___; slip op at 6. Additionally, defendant used the starter pistol as a means to acquire the driver's cell phone. Viewed in a light most favorable to the prosecution, we find that the evidence at trial would have allowed a jury to find beyond a reasonable doubt that defendant used the starter pistol as a weapon in order to restrain the driver. Therefore, contrary to defendant's argument on appeal, there was sufficient evidence to sustain his conviction of unlawful imprisonment. Accordingly, defendant is not entitled to relief on this issue.

## III. INCONSISTENT VERDICTS

Next, defendant argues that due process requires dismissal of the charges due to an inconsistent verdict. While defendant acknowledges " . . . the Michigan rule in criminal cases, inconsistent verdicts are permitted on the rationale that juries possess inherent power of leniency that trial judges do not . . . ," defendant requests that this Court adopt the approaches taken in Maryland and Iowa. We decline defendant's invitation to do so because we find the arguments unpersuasive and also because we are bound by our Supreme Court's decision in *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980). Accordingly, defendant is not entitled to relief on this issue.

## IV. SENTENCING

Defense counsel raised several objections to the scoring of offense and prior record variables at the sentencing hearing and also raises a Sixth Amendment issue relative to *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015). We proceed by first addressing the scoring challenges before addressing the Sixth Amendment issue.

### i. Scoring of the Variables

With respect to scoring of the variables, a circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v*

---

[4]On appeal, defendant does not contest his conviction for interference with electronic communications, MCL 750.540.

-7-

*Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. *Id*. We review de novo the proper interpretation of the sentencing guidelines. *People v Gullett*, 277 Mich App 214, 217; 744 NW2d 200 (2007).

The sentencing offense in this case was unlawful imprisonment, MCL 750.349b, a class-C offense. MCL 777.16q. Defendant's total OV score was 90 points and his total PRV score was 20 for an OV level VI and a PRV level C, for a recommended minimum sentencing range of 43 to 86 months. MCL 777.64. The trial court sentenced defendant at the top of the guidelines to 86 months to 15 years. Defendant challenges the scoring of PRV 7, OV 1, OV 3, OV 4, OV 7, and OV 8.

With respect to PRV 7, for the reasons previously stated, we vacate defendant's felonious assault conviction  This necessitates a reduction in defendant's scoring under PRV 7 from 20 points to 10 points. Such reduction does not, however, change defendant's minimum sentencing guidelines.See MCL 777.57(1).

Defendant challenges the scoring of OV 1 at five points. MCL 777.31(1)(e) governs the scoring of OV 1 and directs a trial court to assess five points where a "weapon was displayed or implied." Here, the trial court did not clearly err in finding that defendant displayed or implied that he had a weapon. As discussed above, there was evidence that defendant used a weapon for purposes of his unlawful imprisonment conviction. Defendant's use of the starter pistol implied that he had a weapon. See *People v Lange*, 251 Mich App 247, 256-58; 650 NW2d 691 (2002) (stating that 5 points is proper under OV 1 where a defendant "merely us[es] an object to imply the presence of a weapon"). The court did not err in scoring OV 1 at five points.

Next, defendant argues that the trial court erred in scoring OV 3 (physical injury to a victim) at 10 points. MCL 777.33(1)(e) governs the scoring of OV 3 and directs the trial court to assess 10 points where "[b]odily injury requiring medical treatment occurred to a victim." Here, the sentencing offense was unlawful imprisonment. OV 3 is offense-specific. *People v Mushatt*, 486 Mich 934; 782 NW2d 202 (2010). Here, a preponderance of the evidence supported the trial court's finding that a victim suffered a bodily injury that required medical treatment. The unlawful imprisonment continued through the sexual conduct and there was evidence that the passenger sought medical treatment after the incident. Thus, the scoring of OV 3 was supported by a preponderance of the evidence and the trial court did not clearly err in assessing 10 points. Moreover, even if we were to agree with defendant, reducing his total OV score by 10 points would not remove him from OV level VI or result in a different recommended minimum sentencing range. See MCL 777.64.

Next, defendant argues that the trial court erred in scoring OV 4 at 10 points (serious psychological injury requiring professional treatment). MCL 777.34(1)(a) governs the scoring of OV 4 and directs a trial court to assess 10 points where "[s]erious psychological injury requiring professional treatment occurred to a victim."

In this case, in addition to Officer Koralski's testimony that the victims were "very shaken up," "very scared," had "watery eyes," and their "hands were shaky" at the hospital, one

of the victims testified that both victims were "crying and freaking out" during the incident. Further, defendant is incorrect that the passenger testified that she only required one counseling session. The passenger testified that she attended counseling at the women's shelter, and went back on another occasion. See *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012) (holding that a victim's statement that he or she was fearful or angry during the incident supports a trial court's assessment of 10 points for OV 4). On this record, the trial court did not clearly err in finding that a preponderance of the evidence supported scoring OV 4 at 10 points. Given our conclusion with respect to this variable, we reject defendant's argument that counsel was ineffective for failing to object to the scoring of OV 4. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) (counsel is not ineffective for failing to raise a futile objection).

Next, defendant argues that OV 7 was improperly scored at 50 points. MCL 777.37 requires that 50 points be assessed against an offender when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). In *Hardy*, 494 Mich at 441, 443, our Supreme Court interpreted the phrase "conduct designed to substantially increase the fear and anxiety of a victim" to mean "conduct that was intended to make a victim's fear or anxiety greater by a considerable amount" and was "beyond the minimum necessary to commit the crime." In applying that standard to the facts surrounding the prosecution in *Hardy*, our Supreme Court concluded that "racking a shotgun" supported scoring OV 7. *Id*. at 445. The Court explained that the victim was threatened with violence, "even though merely displaying the weapon or pointing it at the victim would have been enough to issue a threat," and that conduct was designed to substantially increase the fear of the defendant's victim beyond the "usual level that accompanies" the crime of carjacking because the "victim feared *imminent* death." *Id*. (emphasis added).

In this case, a preponderance of the evidence supported that the trial court did not clearly err in scoring OV 7 at 50 points. Evidence showed that defendant was "playing with the trigger" of the starter pistol in a manner that was intended to frighten the victim. One of the victims testified that defendant was "playing with the trigger" of the pistol and mentioned that defendant was pulling back the "hammer" a bit with the probable intent to scare her. That conduct is analogous to racking a shotgun because in both instances the offender had the intent to place the victim in imminent fear of death. *Hardy*, 494 Mich at 445. Accordingly, the trial court did not clearly err in scoring OV 7.

Defendant argues that the trial court erred in scoring OV 8 at 15 points for victim asportation to "another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). The evidence showed that defendant directed the driver of the vehicle to pull over into a dimly lit parking lot of closed businesses behind snowbanks before he proceeded to commit unlawful imprisonment. By moving the victims into this location, defendant was more able to commit the offense. Accordingly, the trial court did not clearly err in scoring OV 8 at 15 points.

*ii. Sixth Amendment*

In *Lockridge*, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US___;

133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient," *Lockridge*, ___ Mich at ___; slip op at 3.  The Court explained that, therefore, "to the extent that the OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e. the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment." *Id.* at 11.

As a remedy, the *Lockridge* Court made the sentencing guidelines advisory only as opposed to mandatory and struck down the requirement in MCL 769.34(3) "that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id.* at 2.  Henceforth, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence . . . [however] a guidelines minimum sentence range . . . is advisory only and . . . sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id.*  Stated differently, a sentencing court may engage in judicial fact finding to score the OVs—indeed it must continue to score the OVs—but the recommended minimum sentencing range that such fact-finding produces is no longer mandatory, but rather is advisory only.

In sum, pursuant to *Lockridge*, a sentencing court has discretion to consider the recommended minimum sentencing range and fashion a sentence that is reasonable and it need not articulate substantial and compelling reasons for departing from the guidelines' recommended sentencing range.  See slip op at 29 (explaining "[b]ecause sentencing courts will hereafter not be *bound* by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion.")  See also *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329) (discussing what should be considered when imposing a sentence that departs from the guidelines).

In this case, the jury did not find the facts to support the scoring of the OVs beyond a reasonable doubt as they were not part of the elements of unlawful imprisonment and defendant did not admit to these facts.  Accordingly, because those facts established the guidelines' minimum sentence, "an unconstitutional constraint [on the judge's discretion] actually impaired the defendant's Sixth Amendment right." *Lockridge*, ―― Mich at ――; slip op at 32.  The *Lockridge* Court explained the remedy for this type of situation as follows:

> [I]n accordance with [*United States v Crosby*, 397 F 3d 103, 117-118 (CA 2, 2005)] . . . in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, *the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error.*  If the trial court determines that the answer to that question is yes, the court shall order resentencing. [*Id.* at 34 (emphasis added).]

In this case, defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment.  Accordingly, we remand the matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*.  Because defendant may be sentenced to a more severe sentence, defendant may provide prompt notice of

his intent to forgo resentencing. *People v Stokes*, ___Mich App___; ___NW2d___(2015); slip op at 15. If notification is not received in a timely manner, the trial court shall continue with the *Crosby* remand as explained in *Lockridge*. See generally, *Stokes*, ___ Mich App at ___; slip op at 12; *Steanhouse*, ___ Mich App at ___.

We vacate defendant's conviction for felonious assault, and affirm his other convictions. Pursuant to *Lockridge* and *Stokes*, we remand this matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane M. Beckering