PEOPLE v LANGE

Docket No. 226599. Submitted December 5, 2001, at Grand Rapids.
Decided May 10, 2002, at 9:05 A.M.

Charles A. Lange was convicted by a jury in the Kent Circuit Court,
Dennis C. Kolenda, J., of second-degree murder and was sentenced
to twelve to thirty years' imprisonment. The defendant had alleged
that he was not guilty of second-degree murder, but instead was
guilty of voluntary manslaughter. The defendant alleged that he
killed the victim, his wife, as a result of adequate provocation
brought on in the heat of passion (i.e., being informed by his wife
that she was having an affair). The defendant appealed.

The Court of Appeals *held*:

1. There was sufficient evidence to support the conviction.

2. The court did not err in assessing ten points under offense
variable 1 by interpreting the term "weapon" in MCL 777.31(1)(c) to
encompass the defendant's use of a glass mug to repeatedly strike
the victim over the head, thereby causing injuries that resulted in
her death. The term "weapon" in the statute was not intended to
contemplate only those objects that suggest planning or prepara-
tion by the offender, but includes items not intended to be used as
a weapon that are in fact used as a weapon.

3. The sentence, which is within the sentencing guidelines range,
must be affirmed.

Affirmed.

SENTENCES — OFFENSE VARIABLES — WORDS AND PHRASES — WEAPONS.

The term "weapon" as used in the subsection of offense variable 1
that assesses ten points where the "victim was touched by any
other type of weapon" includes an instrument or device used for
attack in a fight or in combat; the term contemplates not only
objects that suggest planning or preparation by the offender but
also objects not intended to be used as a weapon that actually are
used as a weapon (MCL 777.31[1][c]).

*Jennifer M. Granholm*, Attorney General, *Thomas
L. Casey*, Solicitor General, *William A. Forsyth*, Pros-
ecuting Attorney, *Timothy K. McMorrow*, Chief

Appellate Attorney, and *Vicki L. Seidl*, Assistant Prosecuting Attorney, for the people.

*Patrick K. Ehlmann*, for the defendant on appeal.

Before: WILDER, P.J., and GRIFFIN and SMOLENSKI, JJ.

WILDER, P.J. Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317, and sentenced to twelve to thirty years' imprisonment. Defendant appeals as of right both his conviction and his sentence. We affirm.

I. FACTS AND PROCEEDINGS

Defendant's conviction arose from the events of August 20, 1999, when defendant repeatedly struck his wife over the head with a glass mug after allegedly being informed that she was seeing another man. After the attack, defendant called 911 and asked one of his neighbors to come check on his wife because he had just beaten her up. Another individual also called 911, and within minutes police and medical personnel arrived at the scene, and the victim was transported to Spectrum Hospital. As a result of severe head injuries, the victim slipped in and out of consciousness, lapsed into a coma, and died on September 3, 1999.[1] Dr. Stephen Cohle, a forensic pathologist who conducted an autopsy of the victim, testified that the victim had suffered extensive bruising on the underside of the scalp and had suffered "two blows to the top of the head," which "not only caused the skull [to be] driven inward," but also resulted in fractures from the depressed portion of

---

[1] The victim did regain consciousness the day before her death.

the skull all the way "down to the floor of the skull." According to Cohle, "in order to cause a depressed fracture . . . it would take a very severe blow by a heavy object" and the amount of force required would be equal to "an adult person striking the victim . . . with . . . all of his or her might." In addition, the pathologist established that the victim suffered a comminuted nasal fracture, a fracture of the right orbit, two lacerations of the inner lip, one laceration on her chin, and that her upper denture was cracked and missing a tooth.

Defendant, who chose not to testify, did not dispute that he had caused his wife's injuries, and eventual death, by hitting her in the head with a glass mug. Indeed, defendant's only defense was to allege that he was not guilty of second-degree murder and argue that because he attacked his wife as a result of adequate provocation brought on in the heat of passion (i.e., being informed by his wife that she was having an affair), he should only be found guilty of voluntary manslaughter, MCL 750.321. To this end, defense counsel elicited testimony from witnesses tending to show that defendant's wife was involved in an affair at the time of the attack, and during closing arguments informed the jury of the elements of voluntary manslaughter and stated that "[t]he facts of this case dictate that you have to find Mr. Lange guilty of manslaughter. And I'm going to ask you to make the difficult decision, but the one that is dictated by the law, and find Charles Lange guilty of manslaughter."

Following deliberations, the jury convicted defendant of second-degree murder and the trial court originally sentenced defendant to fourteen to thirty years' imprisonment; however, after correction of a sentenc-

ing guidelines scoring error, the trial court resentenced defendant to twelve to thirty years' imprisonment.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that there was insufficient evidence to support his conviction of second-degree murder. We disagree.

### A. STANDARD OF REVIEW

When a defendant claims the evidence is insufficient to support a conviction, we review the evidence presented at trial in the light most favorable to the prosecution in order to determine whether a rational trier of fact could find that all the elements of the crime were proved beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999); *People v Taylor*, 245 Mich App 293, 296; 628 NW2d 55 (2001).

### B. ANALYSIS

Defendant first contends that because the forensic pathologist testified that it was possible the victim's death could have been caused by asphyxiation from accumulated secretions in the victim's airway, which would only have occurred because of gross medical negligence, the prosecution failed to establish that defendant caused the victim's death.[2] We disagree.

---

[2] Defendant neither raised this issue below nor presented any evidence at trial to substantiate a claim of gross medical negligence. Instead, defense counsel *admitted* during both his opening statement and his closing argument that defendant was guilty of voluntary manslaughter. This admission constitutes the acknowledgement that defendant caused the

To prove the elements of second-degree murder beyond a reasonable doubt, the prosecutor must present evidence of " ' "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." ' " *People v Aldrich*, 246 Mich App 101, 123; 631 NW2d 67 (2001), quoting *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999), quoting *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). There is sufficient evidence in the record to establish each of the required elements.

Here, there was no dispute that defendant hit the victim over the head with a glass mug. In addition, the pathologist testified during direct- and cross-examination that the victim's death was the result of severe head injuries. Viewing this evidence in the light most favorable to the prosecution, *Johnson, supra; Taylor, supra*, there is no question that the jury could have found beyond a reasonable doubt that the victim's death was caused by defendant when he intentionally hit the victim in the head with a glass mug. *Aldrich, supra* at 123. Further, because of the degree of force needed to cause the victim's injuries, the jury could have reasonably inferred that defendant acted with malice. *Id.*, citing *People v Djordjevic,*

---

victim's death. While we acknowledge that a defendant has the right to assert inconsistent defenses, *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997), a defendant may not present a new theory on appeal after being unsuccessful on the theory presented at trial. See *Ficano v Lucas*, 133 Mich App 268, 275; 351 NW2d 198 (1983), and *Thoms v Diamond*, 131 Mich App 108, 117; 346 NW2d 69 (1983). See also *People v Flenon*, 42 Mich App 457, 460; 202 NW2d 471 (1972) (It is for the jury to determine if on the basis of the evidence *presented*, the injuries were "reasonably calculated to cause death and that the wounds contributed mediately or immediately to the death.") (internal quotation marks and citations omitted). In any event, as hereafter articulated, we reject defendant's argument as nonmeritorious.

230 Mich App 459, 462; 584 NW2d 610 (1998). Finally, there is no evidence that defendant's actions were authorized by law (i.e., self-defense), see *People v Kemp*, 202 Mich App 318, 322-323; 508 NW2d 184 (1993), and defense counsel conceded during the opening statement that the attack was not an accident, see *People v Hess*, 214 Mich App 33, 37-38; 543 NW2d 332 (1995); *People v Morrin*, 31 Mich App 301; 187 NW2d 434 (1971). Because the question whether defendant had adequate provocation so as to mitigate the homicide from murder to voluntary manslaughter is left to the factfinder, *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998), the jury was free to reject this defense and to conclude that the prosecution had proved the elements of second-degree murder beyond a reasonable doubt.

### III. SCORING OF OFFENSE VARIABLE 1

Defendant also argues that the trial court sentenced him on the basis of an inaccurate scoring of offense variable 1, MCL 777.31, and that he is therefore entitled to be resentenced. Specifically, defendant contends that a glass mug is an object not designed to be used as a weapon and therefore he should not have been assessed ten points under offense variable 1. See MCL 777.31(1)(c). We disagree. We have found no case that defines the term "weapon" as used in MCL 777.31(1)(c). Thus, this issue appears to be one of first impression.

#### A. STANDARD OF REVIEW

The question whether a glass mug can be considered a weapon for purposes of MCL 777.31(1)(c) is a

matter of statutory interpretation and is therefore a question of law that we review de novo. *Etefia v Credit Technologies, Inc,* 245 Mich App 466, 469; 628 NW2d 577 (2001), citing *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n,* 456 Mich 590, 610; 575 NW2d 751 (1998); *In re S R,* 229 Mich App 310, 314; 581 NW2d 291 (1998). As our Supreme Court stated in *Macomb Co Prosecutor v Murphy,* 464 Mich 149, 158; 627 NW2d 247 (2001):

> In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [Citations omitted.]

Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used, *Phillips v Jordan,* 241 Mich App 17, 22, n 1; 614 NW2d 183 (2000), citing *Western Michigan Univ Bd of Control v Michigan,* 455 Mich 531, 539; 565 NW2d 828 (1997), and if a term is not expressly defined in the statute, it is permissible for this Court to consult dictionary definitions in order to aid in construing the term "in accordance with [its] ordinary and generally accepted meaning[]." *People v Morey,* 461 Mich 325, 330; 603 NW2d 250 (1999), citing *Oakland Co, supra* at 604. Further, the language must be applied as written, *Camden v Kaufman,* 240 Mich App 389, 394; 613 NW2d 335 (2000); *Ahearn v*

*Bloomfield Charter Twp*, 235 Mich App 486, 498; 597 NW2d 858 (1999), and nothing should be read into a statute that is not within the manifest intent of the Legislature as indicated by the act itself. *In re S R*, *supra* at 314.

### B. ANALYSIS

MCL 777.31, which codified offense variable 1, provides, in part:

> (1) Offense variable 1 is aggravated use of a weapon. Score offense variable 1 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) A firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon...................................................... 25 points
>
> (b) A firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon .................................................................. 15 points
>
> (c) *The victim was touched by any other type of weapon* ................................................................................. 10 points
>
> (d) A weapon was displayed or implied................. 5 points
>
> (e) No aggravated use of a weapon occurred....... 0 points
>
> (2) All of the following apply to scoring offense variable 1:
>
> \* \* \*
>
> (c) Score 5 points if an offender used an object to suggest the presence of a weapon. [Emphasis added.]

Defendant first contends that because there was no evidence that he had planned to use the glass mug as a weapon, he should not be assessed ten points under offense variable 1. The trial court rejected this argument:

The argument is being made here that what in reality this offense variable is contemplating is the planned use of some implement. It does not say that as a statute. I have to construe it strictly. There's no question that the mug which became the instrument of death here was not intended to be used as a weapon, but it's equally indisputable that, as used, it was a weapon.

We agree with the trial court. The plain language of the statute establishes that the Legislature did not intend the term "weapon" to contemplate only those objects that suggest planning or preparation by the offender. See *In re MCI Telecommunications Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999); *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999); *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995) (Legislative intent is determined by first looking at the language of the statute and courts may not look beyond the expressed language of the statute in order to determine the probable intent of the Legislature.).

Second, defendant contends that when MCL 777.31(1)(c) is read in context with the other statutory provisions of the act, the meaning of the term "weapon" is ambiguous and unclear. Again, we disagree. When the Legislature acts in a certain subject area, it is presumed that the Legislature is aware of existing judicial interpretations of words and phrases within that subject area. The Legislature's silence when using terms previously interpreted by the courts suggests agreement with the courts' construction. *People v Babcock*, 244 Mich App 64, 74-75; 624 NW2d 479 (2000), citing *Fletcher v Fletcher*, 447 Mich 871, 880; 526 NW2d 889 (1994), and *Browning v Michigan Dep't of Corrections*, 385 Mich 179, 186; 188 NW2d

552 (1971). Accordingly, we examine whether and how Michigan jurisprudence has previously defined the term "weapon," as that term is used in other criminal statutes.

In *People v Vaines*, 310 Mich 500, 505-506; 17 NW2d 729 (1945), our Supreme Court defined a "dangerous weapon" as follows:

> "Some weapons carry their dangerous character because so designed and are, when employed, *per se*, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. *The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous.* The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. *When the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon.*"
>
> Daggers, dirks, stilettos, metallic knuckles, slung-shots, pistols, and similar articles, designed for the purpose of bodily assault or defense, are generally recognized as dangerous weapons *per se. Other articles and instruments become dangerous weapons only when they are used or carried for use as weapons. . . . People v Gogak* [205 Mich 260, 265; 171 NW 428 (1919)].
>
> We are convinced that the legislature intended the words "other dangerous weapon," . . . to mean *any concealed article or instrument which the carrier used . . . as a weapon for bodily assault or defense.* [Quoting *People v Goolsby,* 284 Mich 375, 378; 279 NW 867 (1938), emphasis added.]

This Court relied on the definition in *Vaines* to opine that a screwdriver, when used as a knife, constitutes a dangerous weapon, see *People v Barkley,* 151 Mich App 234, 238; 390 NW2d 705 (1986), and the Supreme Court reaffirmed this definition in *People v*

*Lynn*, 459 Mich 53, 58-59; 586 NW2d 534 (1998). We hold, therefore, that this prior definition of the term "dangerous weapon" is embodied within the phrase "any other type of weapon" set forth in MCL 777.31(1)(c).

Finally, we note that *Random House Webster's College Dictionary* (1997) defines "weapon" as "any instrument or device used for attack or defense in a fight or in combat" and "anything used against an opponent, adversary or victim." *Id.* at 1454. Applying this dictionary definition to MCL 777.31(1)(c), it is clear that ten points are to be scored when the "victim was touched by any other [instrument or device used for attack . . . in a fight or in combat]." We conclude, therefore, that the term "weapon," whether through acquiescence in judicial interpretation or as accorded its plain, common, everyday meaning, is applicable to a glass mug that is used as a weapon, and that the trial court properly assessed ten points to defendant under offense variable 1, MCL 777.31(1)(c).

We also reject defendant's contention that because the Legislature provided for only five points to be assessed when the presence of a weapon was implied, see MCL 777.31(1)(d) and (2)(c), the statutory language is ambiguous about the Legislature's intent to assess points when an object not characterized as a weapon per se is used as a weapon. The Legislative scheme assesses points for the use of specific types of weapons in MCL 777.31(1)(a) and (b), and is more generalized in approach in MCL 777.31(1)(c). MCL 777.31(1)(c) acts as a "catch all" provision, showing the Legislature's intent to assess points for the use of weapons across the broadest

possible range of circumstances, consistent with the goal of evaluating the appropriate sentence range for a particular defendant. See *People v Morris*, 450 Mich 316, 327; 537 NW2d 842 (1995); see also *People v Ramsdell*, 230 Mich App 386, 394; 585 NW2d 1 (1998). Moreover, contrary to defendant's suggestion that a ten-point assessment in the circumstances presented here is inconsistent with legislative intent, it appears reasonable and makes perfect sense that the Legislature would intend that a greater number of points be assessed to a defendant who uses an instrument as a weapon and actually touches a person with the instrument, as opposed to merely using an object to imply the presence of a weapon. *Id.* at 392, quoting *People v Norman*, 176 Mich App 271, 274; 438 NW2d 895 (1989) (" 'If the language of the statute is clear and its meaning unambiguous, a common-sense reading of the statute will suffice and no interpretation is necessary.' ")

Because no error occurred when defendant was assessed ten points for offense variable 1, and because defendant's twelve-year minimum sentence falls within the appropriate guidelines range of 144 to 240 months, we affirm defendant's sentence. *Babcock, supra* at 73; MCL 769.34(10).

### IV. CONCLUSION

The prosecution presented sufficient evidence to allow a jury to find beyond a reasonable doubt that defendant committed the elements of second-degree murder. In addition, defendant was properly scored ten points under MCL 777.31(1)(c) for the use of a glass mug during the attack of the victim, defendant's sentencing guidelines range is appropriately estab-

lished at 144 to 240 months, and defendant's twelve-year minimum sentence is within that range. Accordingly, the jury's verdict and the sentence are affirmed.

Affirmed.