# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLOS ORTIZ,

        Defendant-Appellant.

UNPUBLISHED
March 2, 2017

No. 329936
Monroe Circuit Court
LC No. 14-041534-FC

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant, Carlos Ortiz, pleaded guilty to unarmed robbery, MCL 750.530, and the trial court sentenced him as a second habitual offender to 90 to 270 months' imprisonment. Defendant appeals by delayed leave granted,[1] contending that, pursuant to *People v Lockridge*, 498 Mich 358, 395-399; 870 NW2d 502 (2015), he is entitled to a remand for a *Crosby* proceeding to allow the trial court to determine if it would have imposed the same sentence under the now-advisory sentencing guidelines. Defendant also contends that the trial court erred by ordering him to pay attorney fees without assessing his ability to pay. For the reasons stated below, we conclude that defendant's challenge to the court's order regarding attorney fees is premature, but we remand the matter to the trial court for consideration under *Crosby*.[2]

## I. RELEVANT FACTS

This case arises from an assault and robbery that occurred on September 16, 2014, at the Luna Pier Hotel in Luna Pier, Michigan. According to the presentence investigation report (PSIR), defendant and codefendant, Victor Woods, were leaving the Luna Pier Hotel, where they had spent the previous night, when Woods and defendant forced their way into the front desk office. In the office were hotel personnel Vellanki Nagadhar and Lakshman Das-Keshwani. Woods began beating Nagadhar and demanding money. When Woods turned his attention to Das-Keshwani, Nagadhar attempted to escape by climbing over the front desk toward the lobby.

---

[1] *People v Ortiz*, unpublished order of the Court of Appeals, entered December 11, 2015 (Docket No. 329936).

[2] *United States v Crosby*, 397 F 3d 103 (CA 2, 2005).

-1-

Woods caught Nagadhar and continued to beat him in the lobby while defendant beat Das-Keshwani in the office. Upon Woods' return to the office, he resumed beating Das-Keshwani, pushed him into the laundry room and to his living quarters, hit him in the face with a laptop computer, and took approximately $400 from him. Das-Keshwani's jaw was broken as a result of the beating, and had to be wired closed. Das-Keshwani reported that he was unable to talk for six weeks, and that the assault left him fearful and in financial hardship.

Defendant was charged with armed robbery for the assault on Das-Keshwani, MCL 750.529, and unarmed robbery for the assault on Nagadhar, MCL 750.530. Pursuant to an agreement with the prosecution, defendant pleaded guilty to unarmed robbery and agreed to be sentenced within the guidelines; in exchange, the prosecution dropped the armed robbery charge. At his plea agreement hearing, defendant testified that the incident was unplanned, that it began when Woods asked him if he wanted to "get some money," and that he served as lookout for Woods. Defendant maintained that it was Woods who did the beating and hit a victim in the face with a computer.[3] Concluding that the elements of the crime pleaded to were met on an aiding and abetting theory, the trial court found defendant guilty.

## II. *LOCKRIDGE* CHALLENGE

Defendant argues on appeal that he is entitled to a *Crosby* remand because he was sentenced prior to the Supreme Court's issuance of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and the trial court scored offense variables (OVs) 1, 2, 3, 4, 7, and 9 based on judicially found facts, which mandatorily increased his minimum sentencing range. We agree.

Because defendant did not object to the scoring of these OVs at sentencing on Sixth Amendment grounds,[4] our review is for plain error affecting substantial rights. *Id*. at 392. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected [the defendant's] substantial rights." *Id*. at 392-393. To show that the error affected defendant's

---

[3] Defendant could not remember the name of the victim whom Woods had hit with the laptop, and agreed with the trial court that the victim was Nagadhar. However, according to the PSIR, the victim actually was Das-Keshwani. Although defendant did not use the word "laptop" to describe the computer used to strike the victim, it is apparent from the record that it was a laptop computer.

[4] Defendant contends that his objection in the trial court to the court's assessment of points for OV 1, 2, and 7 preserves his scoring-issue appeal with respect to these OVs. However, defendant's objections in the trial court were challenges to the preponderance of the evidence supporting the trial court's assessment of points. Defendant asserted that it was Woods, not he, who used the laptop computer to hit one of the clerks (OVs 1 and 2), and that his conduct did not rise to the level of the "sadism, torture, or excessive brutality" envisioned by OV 7. Defendant does not renew these evidentiary challenges on appeal; rather, he raises only the constitutional challenge arising from our Supreme Court's decision in *Lockridge*. Objecting in the trial court on evidentiary grounds does not preserve a *Lockridge* issue. See *Lockridge*, 498 Mich at 392.

substantial rights, defendant must show that prejudice resulted from the error, "i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 393. Even if a defendant satisfies those three requirements, reversal is a matter for the appellate court's discretion and "is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id*.

The *Lockridge* Court determined that Michigan's sentencing guidelines were constitutionally deficient with respect to "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" *Lockridge*, 498 Mich at 364. To remedy the infirmity, the Court made a sentencing guidelines range scored using judicially found facts advisory rather than mandatory. *Id*. Defendants "(1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. at 395. Once defendant has made this threshold showing, the proper procedure is to remand the matter to the trial court for a *Crosby* proceeding as outlined in *Lockridge*, 498 Mich at 395-399.

Defendant contends that the trial court used judicial fact-finding to score OVs 1, 2, 3, 4, 7, and 9, which resulted in a mandatory increase in his guidelines minimum sentence range. Because defendant admitted facts that support the trial court's assignment of points to OV 1 and 2, we disagree with respect to these OVs. However, we agree with defendant with regard to OVs 3, 4, 7, and 9.

## A. OVS 1 AND 2

Points are assessed under OV 1 for the aggravated use of a weapon. MCL 777.31(1). Ten points may be assessed when the victim is touched by a weapon other than a firearm. MCL 777.31(1)(d). At his plea hearing, defendant admitted that his codefendant used a laptop computer to assault one of the victims. See *People v Lange*, 251 Mich App 247, 257; 650 NW2d 691 (2002) (describing as a weapon "any instrument or device used for attack or defense in a fight or in combat" and "anything used against an opponent, adversary, or victim") (quotation marks and citation omitted). Defendant's admission regarding his codefendant's use of a laptop computer to assault a victim supports the trial court's conclusion that the computer was used as a weapon and, consequently, the assessment of 10 points under OV 1 was proper under a theory of aiding and abetting. MCL 767.39.[5] Thus, we conclude that, in light of MCL 767.39, the trial court based its assessment of 10 points for OV 1 on facts admitted by defendant.

---

[5] MCL 767.39 provides, "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

OV 2 "scores the 'lethal potential of the weapon possessed or used.' " *People v Hutcheson*, 308 Mich App 10, 16; 865 NW2d 44 (2014), quoting MCL 777.32(1). Here, the trial court tied the 1-point OV 2 score to defendant's admission regarding his codefendant's use of the laptop computer to assault one of the victims. An ordinary object, such as a laptop computer, can become a lethal weapon when it is "so employed in an assault" that it becomes dangerous. See *Lange*, 251 Mich App at 256, quoting *People v Vaines*, 310 Mich 500, 505-506; 17 NW2d 729 (1945). Defendant described at the plea hearing that a victim was struck in the face with a computer, and thus, he admitted facts supporting the scoring of OV 2. *Lange*, 251 Mich App at 256. Accordingly, for the same reasons that the trial court's assessment of 10 points for OV 1 was based on defendant's admission, we conclude that the trial court's assessment of 1 point for OV 2 was also based on defendant's admission.

### B. OVS 3, 4, 7, AND 9

OV 3 governs "physical injury to a victim." Trial courts assign 10 points where the victim suffers "[b]odily injury requiring medical treatment." MCL 777.33(1)(d). Although the PSIR stated that Das-Keshwani suffered a broken jaw that required medical attention, defendant did not admit that he or Woods assaulted anyone such that they required medical treatment.

OV 4 governs "psychological injury to a victim." MCL 777.34(1). Ten points are scored for "[s]erious psychological injury requiring professional treatment[.]" MCL 777.34(1)(a) In scoring 10 points for OV 4, the fact that treatment has not been sought is not conclusive. MCL 777.34(2). Although the PSIR reported that the assault had left Das-Keshwani fearful, defendant did not admit that he or Woods inflicted serious psychological injury on the victims of the assault.

OV 7 refers to "aggravated physical assault." MCL 777.37. Fifty points are assessed where "[a] victim is treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Defendant did not admit to any victim being treated with sadism, torture, excessive brutality, or conduct designed to substantially increase the person's fear and anxiety during the offense. Thus, the assignment of 50 points for OV 7 was based on judicially found facts.

OV 9 addresses "the number of victims." MCL 777.39(1). To score OV 9, a trial court must first "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a). Then, the trial court must assign 10 points if "2 to 9 victims . . . were placed in danger of physical injury or death, or 4 to 19 victims . . . were placed in danger of property loss." MCL 777.39(1)(c). Although the PSIR indicates that there were two victims of the assault, defendant's plea agreement testimony did not clearly indicate that there was more than one victim. Consequently, the trial court based its assessment of 25 points for OV 9 on judicially found facts.

If OVs 3, 4, 7, and 9 had not been scored, defendant would have had a total OV score of 11, not 91. The guideline minimum sentencing range for a defendant who is a Class C, second habitual offender with a total PRV score of 35 and a total OV score of 11 is 19 to 47 months. MCL 777.64; MCL 777.21(3)(a). This range is lower than the guideline minimum sentencing

range of 50 to 125 months calculated by the trial court by using judicial fact-finding. Hence, defendant is entitled to a *Crosby* remand. See *Lockridge*, 498 Mich at 395-399.

The prosecution contends that defendant waived his right to a *Crosby* remand via the terms of his plea agreement. Specifically, the prosecution relies on the following language set forth in the Wayne County Circuit Court standard plea agreement form:

> 12. The Defendant waives any claim or right to a jury determination of any fact pertaining to guilt or sentencing and agrees the burden of proof for sentencing shall be by a preponderance of the evidence.

The prosecution relies on this provision to argue that, "[i]f a defendant can waive his right to a jury trial, clearly he can do the same at sentencing." We find the prosecution's argument unpersuasive.

A waiver is " the 'intentional relinquishment or abandonment of a known right.' " *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 722; 113 S Ct 1770; 123 L Ed 2d 508 (1993). The trial court sentenced defendant before our Supreme Court decided *Lockridge*, and, therefore, before the *Lockridge* Court identified the constitutional infirmity inherent in Michigan's sentencing scheme and remedied the infirmity by making the sentencing guidelines advisory. Consequently, neither the prosecution nor defendant could have had in mind that defendant's waiver of a jury trial also waived his right under *Lockridge* to be sentenced according to a constitutional sentencing scheme wherein judicially found facts did not *mandatorily* increase his guidelines minimum sentence range. Therefore, we reject the prosecution's argument that, by accepting the plea agreement, defendant waived his right to challenge his sentence on *Lockridge* grounds.

## III. ATTORNEY FEES

Defendant next argues that he was entitled to an ability-to-pay assessment prior to the trial court imposing attorney fees at defendant's sentencing. We disagree.

To preserve a challenge to court assessed attorney fees, the issue must be raised before the trial court. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (indicating that, to preserve most issues for appellate review, a party must object below). Because defendant did not object to the imposition of attorney fees at his sentencing, this issue is unpreserved. *Id*. As indicated above, we review unpreserved errors for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763.

Because of defendant's guilty plea, the trial court, at the time of sentencing, has the authority to require defendant to pay the "expenses of providing legal assistance to the defendant" by a court appointed attorney. MCL 769.1k(1)(b)(iv). Pursuant to *People v Jackson*, 483 Mich 271, 290; 769 NW2d 630 (2009), a defendant is entitled to notice, and an opportunity to be heard, regarding his ability to pay court assessed attorney fees after the imposition of the fee is enforced. However, "trial courts should not entertain defendant's ability-to-pay-based

challenges to the imposition of fees until enforcement of that imposition has begun." *Id*. at 292. On appeal, defendant does not point to anything suggesting that the imposition of the attorney fees has been enforced against him.[6] Thus, defendant's claim is premature. Unless and until the imposition of attorney fees is enforced against defendant, defendant is not entitled to an ability-to-pay assessment. *Id*.

## IV. CONCLUSION

We reject defendant's challenge to the trial court's imposition of attorney fees as premature, as defendant has failed to allege that enforcement proceedings have begun. However, because defendant has established that his guidelines minimum sentence range was actually constrained by a violation of the Sixth Amendment and he was sentenced within those guidelines, we order a *Crosby* remand. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola

---

[6] As noted in *Jackson*, "remittance orders of prisoner funds, under MCL 769.1*l*, generally obviate the need for an ability-to-pay assessment with relation to defendants sentenced to a term of imprisonment because the statute is structured to only take monies from prisoners who are presumed to be nonindigent." *Id*. at 274. Defendant has not stated whether funds have been taken from a prisoner account or anywhere else associated with enforcement of the imposed attorney fee. As the prosecution correctly points out, if defendant believes he has a meritorious ability-to-pay argument at the time of enforcement, he should submit that issue to the trial court for evaluation. *Id*. at 293-294, 296.