# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DENNIS MILLER,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 337930
Wayne Circuit Court
LC No. 16-010098-02-FC

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of armed robbery, MCL 750.529. He was sentenced to serve 120 to 240 months in prison. Defendant appeals by right, and we affirm.

## I. FACTS

Defendant robbed 70-year-old Theodore Reynolds at a bus stop after Reynolds had cashed a check at a nearby check-cashing business. Reynolds had placed almost $900 in his pocket and was speaking with an elderly woman at the bus stop when defendant approached from behind while co-defendant Earl Finley approached Reynolds from the front. The assailants knocked Reynolds to the ground. Defendant held an object to Reynolds neck and Finley searched his pockets before both assailants fled.

## II. ANALYSIS

## A. STANDARD OF REVIEW

Defendant argues that the trial court erred in scoring offense variable 1 (OV 1) and offense variable 10 (OV 10). This Court reviews the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

-1-

In a Standard 4 brief, defendant argues that his trial counsel provided ineffective assistance. He failed to preserve this issue by moving for a new trial or a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment[1] right to counsel is reviewed de novo. *Id.* at 242.

## B. OFFENSE VARIABLES

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate sentencing guidelines range. *Id*. at 89 n 7. The trial court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The trial court's determinations must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

### 1. OV 1

Defendant argues that OV 1 was incorrectly assessed at 10 points. He maintains that the record did not support the conclusion that defendant used a weapon. He argues that the presence of a weapon was merely implied. We disagree.

MCL 777.31(1) provides in pertinent part that the following points are to be assessed for "aggravated use of a weapon":

(c) 15 points where a firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon;

(d) 10 points where the victim was touched by any other type of weapon;

(e) 5 points where a weapon was displayed or implied;

(f) 0 points where no aggravated use of a weapon occurred.

Five points are not to be scored if, as it is here, the sentencing offense is a violation of MCL 750.529. MCL 777.31(2)(e).

---

[1] US Const, Am VI.

"The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), citing *People v Haacke*, 217 Mich App 434, 436; 553 NW2d 15 (1996). Here, Reynolds testified that defendant applied a hard object to his neck while his codefendant went through Reynolds' pockets. However, Reynolds could not see what was held to his neck and could not tell of what material it was made. Reynolds said that he was compliant because he was concerned about the object held to his neck.

Because the statute does not define "weapon," the Court in *People v Ball*, 297 Mich App 121, 125; 823 NW2d 150 (2012), cited the *Random House Webster's College Dictionary* (2001) definition of weapon as "1. any instrument or device used for attack or defense in a fight or in combat. 2. anything used against an opponent, adversary, or victim . . . . 3. any part or organ serving for attack or defense, as claws, horns, teeth, or stings." Furthermore, the Court in *People v Lange*, 251 Mich App 247, 256-257; 650 NW2d 691 (2002) (citations, quotation marks, and emphasis omitted), discussed that any "[o]ther articles and instruments" may be weapons when "they are used or carried" for use as weapons.

It is reasonable to infer that defendant held the object to Reynolds neck as a part of the robbery in order to threaten Reynolds into compliance. Thus, we conclude that the instrument was used "as a weapon" to attack Reynolds. Because Reynolds described an "instrument" or "other article" that was held to his neck to ensure compliance with his attackers, it was proper for the trial court to determine that a preponderance of the evidence supported the conclusion that "the victim was touched by any other type of weapon." MCL 777.31(1)(d). Further, in order to convict defendant of armed robbery, the jury had to find that defendant possessed either "a weapon designed to be dangerous and capable of causing death or serious injury," or "any other object capable of causing death or serious injury that defendant used as a weapon," or "any other object used or fashioned in a manner to leave a person who was present to reasonably believe it to be a dangerous weapon." In all of these scenarios, the thing placed to the back of Reynolds' neck was used as a weapon to ensure compliance.

2. OV 10

Next, defendant argues that the trial court erred in assessing OV 10, exploitation of a victim's vulnerability, at 10 points. MCL 777.40(1). OV 10 is assigned 10 points where "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). "Exploit" means to "manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" is defined to "mean[] the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

Defendant argues that the trial court erred in assessing OV 10 at 10 points based on a determination that Reynolds was 70 years old and defendant's co-defendant was younger. In *People v Gloster*, 499 Mich 199, 206-209; 880 NW2d 776 (2016), the Court determined that a defendant "shall not have points assessed solely on the basis of his or her co-offenders' conduct

unless the OV at issue specifically indicates to the contrary." MCL 777.40(1) does not include language permitting OV 10 to be assessed based solely on the conduct of a co-defendant. However, the trial court did not rely solely on the age difference between Reynolds and the co-defendant, but found that "[b]oth of them attacked this elderly man." Thus, it appears that the trial court relied on the concerted effort in attacking a man of Reynolds' age. Moreover, Reynolds' was vulnerable due to his age. The offense variable's explicit recognition of the exploitation of senior citizens is "recognition of the distinction between the decline in physical strength characteristic of advanced age, and the less easily articulated decline in aggressiveness in confrontational situations that also often accompanies advancing years." *People v Piotrowski*, 211 Mich App 527, 531; 536 NW2d 293 (1995). Aside from his age, photos from the surveillance cameras show that Reynolds appeared older and frail. Additionally, the vulnerability of a victim does not have to be "*inherent* in the victim;" rather, it may "arise from external circumstances as well." *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011) (emphasis in original). In *Huston*, the Court concluded "that a person walking alone at night in a parking lot while two armed people hidden from that person's view lie in wait to rob that person is a vulnerable victim because he or she would have a readily apparent susceptibility to injury [or] physical restraint." *Id*. at 467 (quotation marks and citation omitted). Here, the photos show that Reynolds was carrying a large bag, and he testified that he had just left a check-cashing business with almost $900 in his pocket. Reynolds was attacked from the rear while he was speaking to a seated elderly woman. Thus, Reynolds was vulnerable to victimization due primarily to his age and elderly appearance, but also due to the circumstances, including that he had just left a check-cashing business with a great deal of cash, his hands were occupied by the large bag, his attention was on an acquaintance, and his assailants came at him from behind.

Defendant argues that he is also an older adult, and because he was just seven years younger than Reynolds, he could not have exploited Reynolds' age. However, the evidence established that defendant attacked a vulnerable Reynolds from behind where he could not be seen. Additionally, the surveillance video of the attack shows that defendant and his co-defendant had separated, with the co-defendant positioned in front of Reynolds and defendant positioned behind him, as they converged on an unaware Reynolds immediately before knocking him to the ground and robbing him. Further, the still photographs from the surveillance cameras show defendant and the co-defendant walking in the area of the check-cashing store in the minutes before the attack, suggesting that they saw an older man cashing his check and targeted him. Thus, despite defendant's age, he was able to exploit Reynolds' vulnerabilities with strategy, surprise, and physical exertion. A preponderance of the evidence supported the determination that defendant "exploited a victim's [] agedness," supporting an assessment of 10 points for OV 10.

## C. INEFFECTIVE ASSISTANCE

Defendant argues that his trial counsel provided ineffective assistance by failing to represent defendant at the preliminary hearing, by failing to inform the trial court that two witnesses were lying to the jury, and by not having the codefendant testify. We conclude that defendant has failed to establish his claim.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant must also show that the resultant proceedings were fundamentally unfair or unreliable. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

A counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich App at 667. Defendant first argues that the performance of his counsel was deficient because she was not present at the preliminary examination. The right to counsel guaranteed by the Sixth Amendment applies to " 'critical' stages of the proceedings where counsel's absence might harm defendant's right to a fair trial." *People v Buie*, 298 Mich App 50, 61-62; 825 NW2d 361 (2012) (citation omitted). "The right to counsel attaches and represents a critical stage 'only at or after the initiation of adversary judicial proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment.' " *Id.*, quoting *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994). "[T]his Court has repeatedly commented that defendants have a constitutional right to counsel at preliminary examinations in Michigan." *People v Lewis*, 501 Mich 1, 5-6; 903 NW2d 816 (2017). However, defendant was represented by counsel at his preliminary examination, although it was a substitute for his designated counsel. Defendant does not demonstrate that the presence of alternative counsel resulted in him receiving ineffective assistance of counsel at his preliminary examination. The mere absence of his designated counsel does not establish an ineffective assistance claim.

Next, defendant argues that the performance of his trial counsel was deficient in failing to address the allegedly perjured testimony of Detroit Police Officer John Pinchum and Detroit Police Detective Levan Adams. He claims counsel should have "alarm[ed]" the court that they were lying. Pinchum testified that he arrested defendant on November 3, 2016, and that he had been familiar with defendant from pan handling in the area. Defendant does not specify what aspects of Pinchum's testimony were allegedly false or mention Pinchum's name in the body of his argument in the Standard 4 brief. Thus, defendant has not demonstrated that his trial counsel failed to alert the trial court to his false testimony.

Adams testified that he collected video surveillance from the check-cashing business, and that he interviewed defendant in jail. The surveillance video and a recording of Adams' interview with defendant were played for the jury. Defendant suggests Adams was "playing with evidence." However, he did not specify what Adams did to tamper with the evidence, or what testimony was inaccurate. Adams was unsure of the date of the robbery and the date of defendant's arrest before consulting the police report, which caused some inconsistency in his testimony. However, any inconsistency in Adams' testimony would have been helpful to

defendant in undermining Adams' credibility, and defendant's trial counsel highlighted Adams' uncertainty about the dates while questioning him. Thus, defendant has not demonstrated that his trial counsel provided ineffective assistance in failing to identify false testimony. Moreover, any inconsistencies in Adams' testimony would have been exposed to the jury by viewing the videos. There was no argument in the trial court regarding the authenticity of the recordings, and defendant's trial counsel performed a voir dire examination of Adams before the interview was admitted. Most significantly, defendant confirmed the contents of the video in describing his presence and interaction with Reynolds.

Lastly, defendant argues that the performance of his trial counsel was ineffective in failing to call his co-defendant as a witness. Defendant claims he was blocked from testifying by the trial court. Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *In re Ayres,* 239 Mich App 8, 22; 608 NW2d 132 (1999). "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy which we will not second-guess with the benefit of hindsight." *People v Dixon,* 263 Mich App 393, 398; 688 NW2d 308 (2004), quoting *People v Rice (On Remand),* 235 Mich App 429, 445; 597 NW2d 843 (1999) (footnotes and citation omitted).

Here, defendant's trial counsel, with the assistance of the trial court, investigated whether the co-defendant should be a defense witness. After the parties rested, defense counsel informed the trial court that defendant had asked about the possibility of calling the co-defendant as a witness. Defense counsel stated that he had advised against doing so because of the possibility of impeachment, and that defendant had accepted this advice prior to resting his case but questioned it on the next day of trial. The co-defendant was interviewed by defendant's attorney, who reported that the proposed testimony would have been very damaging to defendant, and that his trial strategy was therefore not to call him as a witness. We conclude that the performance of defense counsel cannot be considered deficient because she investigated the possible testimony and employed a reasonable trial strategy of not presenting apparently damaging testimony.

Further, counsel's performance will be deemed to have prejudiced the defense only if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan,* 275 Mich App at 667. Here, defendant's conviction rested on Reynold's description of his robbery, surveillance video of the robbery, and the video of defendant's interview with Adams. Defendant does not challenge the substance of this evidence. Thus, he is unable to demonstrate that any error caused him prejudice.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen

-6-