*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RALPH RICHARD CARLIN, JR.,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2020

No. 345705
Wayne Circuit Court
LC No. 17-010449-01-FH

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of assault by strangulation or suffocation, MCL 750.84(1)(b).[1] He was sentenced to 2 to 10 years' imprisonment for the assault by strangulation conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

Defendant and the victim began dating in April 2013, but ended their relationship in June 2017. Despite their breakup, defendant would constantly send text messages to the victim expressing his love for her and the need to work on their relationship.

The victim testified that on October 21, 2017, defendant knocked on the door of the victim's home, but she refused to let him inside. The victim was in her bedroom when she "heard the blinds" and realized she left the window open near the door. She found that the recliner near the windowsill was knocked over. The victim encountered defendant coming out of her room. He backed the victim into her room, climbed on top of her on the bed, and demanded to know who she was with the night before. The victim yelled at defendant to get off of her and get out. Defendant grabbed the victim's cellular telephone, but he did not know the key code to gain access to it. The couple moved from room to room of the home as they argued. The victim described

---

[1] The jury acquitted defendant of first-degree home invasion, MCL 750.110a(2), and aggravated domestic violence, MCL 750.81a(2).

defendant as in a state of "pure rage" and was "profusely sweating." As the couple moved and argued, defendant ripped the victim's shirt.

The couple ended up in the room across from the victim's bedroom. Defendant cried and asked for forgiveness. The victim said that would not happen. Defendant replied "well, then we're both dying today." Defendant threw the victim to the floor, sat on her, and grabbed the cord from the iron that was nearby. He wrapped the iron's cord around the victim's neck and pulled it so tight that the victim could not breathe. The victim could not accurately estimate the time that the cord was wrapped around her neck, but indicated that it "felt like forever." Eventually, defendant released the cord from around the victim's neck and stated she "wasn't worth it." Once the cord was freed, the victim jumped up, ran out of the house, and drove away. The victim did not have her telephone with her. However, she testified that she would not have called the police because she loved defendant and did not want to get him in trouble.

Eventually, the victim returned home because she did not see defendant's car nearby. Once inside the home, she found her telephone. Defendant had texted her with the following message: "Why would you strangle yourself? Why would you call me over and put a cord around your neck and strangle yourself?" Additionally, in the message, defendant advised that he was blocking her, not to call him ever again, and she would not get him in trouble. The victim called defendant and told him that she was hurt. Defendant offered to take the victim to the hospital, but advised her that they would both go to jail because he had "marks" on him as well.

After speaking to defendant, the victim's mother called her, but the victim did not reveal the assault because she was ashamed and protected him. However, a friend called the victim, and the victim was crying and hysterical. The victim revealed that defendant broke into her house, tried to kill her, and she could not breathe. The friend called 911, relayed the information regarding defendant's assault, and drove to the victim's home. She found the victim sitting on the couch, crying hysterically, and still complaining of an inability to breathe. There were marks around her neck, and her face was red. The police arrived, and photographs of the victim's injuries were taken. The victim needed medical attention because her whole body was sore, and she had difficulty swallowing. Her mother drove her to the hospital.

The victim also testified that this assault was not the only act of violence that defendant committed. In May 2017, the victim went on a date with another man, and defendant saw them return to the victim's home. Defendant forced his way into the home and pinned the man against the wall. After the man left, defendant assaulted the victim. Specifically, he squeezed the victim's breasts until they were completely bruised. Defendant stated that he deliberately inflicted this damage to scar her and deter relationships with other men. This action displaced the victim's breast implants and required her to have corrective surgery. She testified that she ended the relationship in June 2017 after defendant tried to commit suicide. The victim stated that she "couldn't take any more" because defendant was either going to take his own life or the victim's life. The victim testified that, despite the criminal case, defendant still contacted her, even at work. Additionally, he tried to contact the victim's ex-husband and friends. The victim acknowledged that she did not want to pursue a criminal case and believed that, if she had not received therapy, she would still be in a relationship with defendant.

On cross-examination, the victim admitted that despite their breakup in June 2017, she continued to have dinner, attend festivals, and engage in intimacy with defendant. The victim explained that their relationship was "on and off every other week" until October 21, 2017. The victim denied striking defendant when he arrived at her home on October 21, 2017. After defendant was charged with the assault, he continued to communicate with the victim in an attempt to dissuade her from appearing in court. The victim also admitted that she was intimate with defendant after the charged assault. The victim acknowledged that these actions occurred despite a no-contact order in the criminal case and the fact that the victim obtained a personal protection order against defendant.

Defendant testified that he took his grandson to a birthday party thrown by a long-time friend on October 20, 2017. The victim was angry and accused defendant of cheating. She called and texted him at all hours, but he did not respond. The next day, the victim told defendant to "be a man" and come to her home. When he arrived, she punched him. The victim was "crazy mad," ripped off her shirt, and displayed her breasts, telling defendant that only other men would be touching her chest. The victim then grabbed the iron, wrapped the cord around her neck, cursed at defendant, and told him that he was going to jail that day for attempted murder. The victim then said that she could not call the police because she was still drunk from the night before. She told defendant that she wished he had committed suicide in June 2017. Defendant left the victim's home, but she kept calling him. He sent her a text message about her self-strangulation to preserve the evidence and because he knew the victim would not send a text message back. Later that day, defendant was arrested even though he denied any assault and strangulation of the victim.

## II. OFFENSE VARIABLES (OV)

Defendant contends that the trial court improperly scored OV 1, OV 2, and OV 19, and he is entitled to resentencing in light of the correct scoring of these guidelines. We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). If the trial court sentenced a defendant on the basis of a scoring error that altered the appropriate guidelines minimum sentence range, the defendant is entitled to resentencing using appropriately scored guidelines. See *id.* at 90-91. However, where "a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Id.* at 89 n. 8. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR [pre-sentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

"OV 1 and OV 2 of the sentencing guidelines address a defendant's use of a weapon." *People v Young*, 276 Mich App 446, 450; 740 NW2d 347 (2007). OV 1 assesses points for the aggravated use of a weapon. MCL 777.31; *People v Morson*, 471 Mich 248, 256; 685 NW2d 203

(2004). A trial court may properly assess 10 points for OV 1 if the victim was "touched" by a weapon other than a firearm, knife, or some sort of harmful substance or device. See MCL 777.31(1)(a)-(d). This Court has held that within the context of OV 1, a "weapon" is "any instrument or device used for attack or defense in a fight or in combat and anything used against an opponent, adversary or victim." *People v Lange*, 251 Mich App 247, 257; 650 NW2d 691 (2002) (quotation marks and citation omitted). Therefore, the manner in which an item is used determines whether the instrument constitutes a weapon for sentencing guidelines purposes. *Id*.

In the present case, an iron cord is not an item commonly associated as a weapon. However, in the course of defendant's argument with the victim, defendant sought to continue the couple's relationship. When the victim refused to oblige defendant, he angrily advised the victim that they were both going to die that day. He grabbed the iron cord, placed it around the victim's neck, and squeezed the cord tightly so the victim could not breathe. The manner in which the iron cord was used, coupled with the statement that the victim was going to die, demonstrates that it was used as a weapon. Irrespective of the common use of a cord, defendant used the iron cord in a manner designed to strangle the victim. Accordingly, the trial court appropriately scored OV 1 at 10 points.

Defendant also contends that OV 2, addressing lethal potential of the weapon used, was inappropriately scored at one point. One point is scored for OV 2 if the defendant possessed or used a potentially lethal weapon other than a harmful substance or device, a firearm, or a knife. MCL 777.32(1)(a)-(e). If an instrument does not constitute a weapon for purposes of OV 1, it is not a weapon as set forth in OV 2. See *People v Hutcheson*, 308 Mich App 10, 17; 865 NW2d 44 (2014). Consistent with our analysis of OV 1, the trial court appropriately scored OV 2 at one point. Defendant used the iron cord to strangle the victim. He placed the cord around the victim's neck and squeezed the cord to the point that the victim could not breathe. The victim testified that after defendant released the cord she continued to struggle to breathe, had difficulty swallowing, and sought treatment at a local hospital. Because the victim could have been strangled to death with the iron cord, the trial court did not clearly err in its scoring of this variable.[2]

Defendant also submits that the trial court improperly assessed 10 points for OV 19. "OV 19 applies if there was a 'threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services.' " *People v Hershey*, 303 Mich App 330, 342; 844 NW2d 127 (2013). An assessment of 10 points for OV 19 is proper where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(c). The phrase "interfere with the administration of justice" is defined in accordance with its plain and

---

[2] Defendant also contends that OV 1 and OV 2 were improperly scored because his DNA and fingerprints were not on the iron cord and only a thin red line was around the victim's neck. However, questions regarding the weight and credibility of the evidence are for resolution by the jury, and this Court cannot interfere with the jury's role. *People v Carll*, 322 Mich App 690, 696; 915 NW2d 387 (2018). Irrespective of the lack of defendant's biological material on the iron cord, the jury found that the victim's testimony was credible regarding defendant's use of the iron cord in a manner designed to strangle her.

ordinary meaning "to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *Hershey*, 303 Mich App at 343. OVs are usually assessed points with regard to the sentencing offense alone. *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). However, because the administration of justice in OV 19 expressly includes events that transpire after the sentencing offense is concluded, "the offense variable may be scored for conduct that occurred after the sentencing offense was completed." *People v Smith*, 488 Mich 193, 195; 793 NW2d 666 (2010). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016).

Defendant contends that 10 points were inappropriately scored for OV 19 because a violation of the condition of his bond regarding victim contact had no bearing on the investigation, trial, and conviction of the assaultive offense. However, the trial court assessed 10 points for OV 19 because defendant repeatedly attempted to contact the victim in violation of the no-contact order in order to dissuade her from appearing at trial and testifying against him. These contacts occurred after defendant was charged with assault by strangulation. By trying to prevent the victim from testifying at trial, defendant was attempting to avoid being held accountable for the sentencing offense. Therefore, the trial court properly assessed 10 points for OV 19.

## III. DEPARTURE SENTENCE

Finally, defendant contends the trial court violated the principle of proportionality and that his sentence is unreasonable. We disagree.

A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness, and there is no requirement that the sentencing court articulate a substantial and compelling reason for that departure. *People v Lockridge*, 498 Mich 358, 365-365, 392; 870 NW2d 502 (2015). The legislative sentencing guidelines are advisory, and the appropriate inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 459; 902 NW2d 327 (2017). On appeal, the reasonableness of a sentence is reviewed for an abuse of discretion. *Id*. at 471. To determine whether a departure sentence is more proportionate than a sentence within the guidelines range, the trial court should consider whether the guidelines accurately reflect the seriousness of the crime, factors not considered by the guidelines, and factors considered by the guidelines, but given inadequate weight. *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). To facilitate appellate review, the trial court must justify the sentence imposed with an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. *Id*.

Defendant's guidelines minimum sentence range was 0 to 17 months' imprisonment, but defendant was sentenced to 2 to 10 years' imprisonment. Defendant submits that such a "high" sentence was unwarranted because he had no prior criminal history, and the jury did not convict him of two other offenses pertaining to unlawful entry into the victim's home and domestic violence, demonstrating that it questioned the credibility of the victim.

The trial court acknowledged that the sentencing guidelines are advisory, and it is clear from the record that the trial court considered the seriousness of the offense. Further, the trial court

noted that although defendant did not have a criminal history, his conduct was not isolated; rather, he engaged in a pattern of controlling, violent behavior over the years of the relationship and selected the victim because of her low self-esteem. It also cited the prior incident of abuse in which defendant deliberately damaged the victim's breast implants to demonstrate that she should feel lucky that defendant was "willing to tolerate" her.

The trial court noted that defendant tried to continue his control over the victim by contacting her and using his influence to convince her not to appear at trial and that this behavior also demonstrated a lack of regard for the judicial system. It also cited defendant's contact with an excused juror. Thus, the trial court acted within its discretion in sentencing defendant to 2 to 10 years' imprisonment because that sentence was, as explained by the trial court, determined to be proportionate to the offense and the offender. The trial court took particular effort to explain the reasons for the departure sentence, the degree of the departure, and why the departure sentence was more proportionate than a sentence falling within the guidelines minimum sentence range. The trial court sufficiently justified the imposition of the departure sentence of 2 to 10 years' imprisonment. The trial court's upward departure was reasonable and proportionate under the circumstances of this case and defendant is not entitled to resentencing.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro