686 N.W.2d 502 (2004)
262 Mich.App. 408
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Michael Wayne NICHOLS, Defendant-Appellant.
Docket No. 248102.
Court of Appeals of Michigan.
Submitted June 3, 2004, at Lansing.
Decided June 15, 2004, at 9:00 a.m.
Released for Publication September 1, 2004.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, Henry C. Zavislak, Prosecuting Attorney, and *503 Jerrold Schrotenboer, Chief Appellate Attorney, for the people.
Jon F. Hummel, East Lansing, for the defendant on appeal.
Before: HOEKSTRA, P.J., and O'CONNELL and DONOFRIO, JJ.
DONOFRIO, J.
Defendant appeals as of right his convictions on two counts of assaulting, battering, resisting, obstructing, or opposing a police officer, MCL 750.81d(1). Defendant was sentenced as a third-offense habitual offender to two to four years' imprisonment for each count, to be served concurrently. Defendant argues that MCL 750.81d is void for vagueness, and that the prosecution abused its discretion when it charged defendant under MCL 750.81d rather than MCL 750.479. After reviewing the record, we are not persuaded by defendant's arguments. We affirm.
Defendant first argues that MCL 750.81d is void for vagueness as applied to the facts of this case. Defendant specifically states that the statute is void because it confers unlimited discretion on the trier of fact to determine whether the mental element of MCL 750.81d is satisfied. The prosecution responds that MCL 750.81d is not unconstitutionally vague because the average person would understand the meaning of the statute, including the mental element defendant puts at issue.
"This Court reviews de novo a challenge to the constitutionality of a statute under the void-for-vagueness doctrine." People v. Tombs, 260 Mich.App. 201, 217-218, 679 N.W.2d 77; (2003), quoting People v. Beam, 244 Mich.App. 103, 105, 624 N.W.2d 764 (2000). "A statute may be challenged for vagueness on three grounds: (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; (3) its coverage is overbroad and impinges on First Amendment freedoms. Id., 260 Mich.App. at 218, 679 N.W.2d 77, citing People v. Howell, 396 Mich. 16, 20, 238 N.W.2d 148 (1976), and Grayned v. Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)". "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." Id., citing Howell, supra, 396 Mich. at 21, 238 N.W.2d 148, and United States v. Nat'l Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
Because defendant does not claim that his conduct is constitutionally protected by the First Amendment, we examine defendant's vagueness challenge in light of the facts of this case. MCL 750.81d(1) provides, in relevant part:
[A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.
Defendant asserts that the phrase "knows or has reason to know" does not articulate an ascertainable standard of guilt, and is so indefinite that it does not have any real meaning. He claims that the statute is therefore unconstitutionally vague because it confers on the fact-finder unstructured and unlimited discretion to determine whether an offense has been committed.
The evidence at trial showed that at on October 25, 2002, at approximately 2:40 a.m., after being dispatched to the scene, Officer Craig Edmondson encountered defendant in the middle of a road yelling. Officer Edmondson was dressed in his police *504 uniform and his police car was a fully marked patrol vehicle. The officer stopped his car in the middle of the roadway, turned on the red and blue overhead lights, and positioned the spotlight directly on defendant. At this point defendant was standing with his back to Officer Edmondson directly in front of the police vehicle, yelling and making hand gestures. Officer Edmondson surveyed the scene and did not see anyone else around defendant. Officer Edmondson got out of his vehicle, yelled at defendant in an attempt to get his attention, and tried to make eye contact with defendant.
Defendant continued yelling, and walked toward the right side of the police car and then behind the vehicle but did not look at the officer. Officer Edmondson turned around and walked to defendant. As Officer Edmondson raised his hand in an attempt to keep defendant at a safe distance, defendant, who was sweating, and screaming in a high-pitched voice, looked at the officer with wide, dilated eyes. Defendant swung at Officer Edmondson's hand and yelled "I'm going to die first." Officer Edmondson loudly commanded defendant to calm down and relax. Defendant pushed the officer, hit his vest, started kicking, and ran away while screaming expletives directed at Officer Edmondson. The officer pursued defendant for approximately two blocks, grabbed defendant, and got him under momentary control. But, defendant continued to push, pull, kick, scream, and bite. A wrestling match then ensued until back-up arrived and another officer assisted in attempting to subdue defendant. However, the officers were unable to control defendant in order to handcuff him and only after a third officer arrived and assisted in apprehending defendant were the officers able to handcuff him. Throughout this time the officers repeatedly gave defendant oral commands to calm down and stop resisting. Defendant continued to resist and kick at the officers as he was taken into custody. There was evidence admitted at trial that at certain points during the mêlée defendant appeared to be in full possession of his faculties.
At the police station, defendant stopped moving and there appeared to be something wrong. Defendant was taken to a hospital, where he remained for several days. At trial, defendant admitted to using marijuana and cocaine within a day before the incident. However, he denied knowingly ingesting any amphetamines or barbiturates despite medical evidence admitted at trial that showed he ingested the substances. Defendant testified at trial that he did not remember any of the events leading to his arrest. He stated that he remembered walking out of a friend's house to get some fresh air after taking a sip of an alcoholic beverage prepared by someone else. The next thing that he remembered was waking up in the hospital. The hospitalization was not related to any actions by the officers. The entire fracas, arrest, and the taking of defendant into custody was captured on videotape, admitted into evidence, and viewed by the jury.
Defendant agrees there is ample evidence that he resisted, obstructed, or opposed police officers. But, he asserts he was so "out of it" that he did not realize what he was doing, or that he was even involved in an incident with police officers. In his brief on appeal, defendant's position is that because there was evidence of both voluntary and involuntary intoxication in this case, that the phrase "knows or has reason to know" does not provide an ascertainable standard of guilt when applied to the facts of this case.
Our review of the evidence reveals that defendant hit, pushed, pulled, and kicked *505 police officers after he saw police officers in full uniform and fully marked police vehicles with lights and flashers engaged. Defendant also heard their loud and persistent commands and warnings, but rather than submitting, he aggressively came into physical contact with one officer and then ran for almost two blocks before he was apprehended. While he was being subdued, defendant continued to violently fight and even bite police officers despite their numerous warnings and stun techniques. When examining the statute at issue in light of defendant's deliberate actions, we conclude that this statute is not unconstitutionally vague. The common meaning of the phrase, "knows or has reason to know," does not confer unlimited discretion on the trier of fact to determine whether the statute has been violated.
Unless defined in the statute, every word of the statute should be accorded its plain and ordinary meaning. If a statute does not expressly define its terms, it is our duty to "`give undefined statutory terms their plain and ordinary meaning [by consulting] dictionary definitions.'" People v. Cathey, 261 Mich.App. 506, 514 n. 4, 681 N.W.2d 661 (2004), quoting Koontz v. Ameritech Services, Inc., 466 Mich. 304, 313, 645 N.W.2d 34 (2002), and citing MCL 8.3a; People v. Hill, 257 Mich. App. 126, 145, 667 N.W.2d 78 (2003). The term "know" is defined as "to perceive or understand as fact or truth; apprehend clearly and with certainty." Random House Webster's College Dictionary (1997). Hence, "to know" connotes "actual knowledge." The requirement of actual knowledge is a limiting feature of the statutory phrase. It requires the fact-finder to engage in an analysis to determine whether the facts and circumstances of the case indicate that a defendant had actual knowledge. Charging the fact-finder with the distinct assignment of determining actual knowledge does not confer unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.
Our Supreme Court has stated in a different context that actual knowledge is not established by proof of constructive, implied, or imputed knowledge. Travis v. Dreis & Krump Mfg. Co., 453 Mich. 149, 173, 551 N.W.2d 132 (1996). It follows that the second portion of the statutory phrase at issue, "has reason to know," is established with something less than actual knowledge. The phrase "has reason to know" can be stated differently as "has reasonable cause to believe" and can be proven by illustrating that a defendant had knowledge less than actual knowledge. The prosecution could sustain its burden by proving defendant had constructive, implied, or imputed knowledge, or by using the record evidence to show that a defendant should have had knowledge on the basis of the facts and circumstances of the case.
The second portion of the statutory phrase, "has reason to know," also requires the fact-finder to engage in an analysis to determine whether the facts and circumstances of the case indicate that when resisting, defendant had "reasonable cause to believe" the person he was assaulting was performing his or her duties. Tasking the fact-finder with this determination does not confer unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. Instead, the statute requires the trier of fact to engage in an objective review of the facts of the case and determine whether the prosecution met its burden by proving that defendant had constructive, implied, or imputed knowledge, or that sufficient evidence exists to show that a defendant should have had knowledge on the basis of the facts of the case.
*506 For all of these reasons, we find that the phrase, "knows or has reason to know" is fairly ascertainable by persons of ordinary intelligence and may be readily applied in the context of resisting arrest under MCL 750.81d. Therefore, MCL 750.81d is not unconstitutionally vague as applied to defendant.
Finally, defendant argues that the prosecution abused its discretion when it charged defendant under MCL 750.81d rather than MCL 750.479. The prosecution is given broad charging discretion. People v. Conat, 238 Mich.App. 134, 149, 605 N.W.2d 49 (1999). The prosecutor has discretion to bring any charges supported by the evidence. People v. Yeoman, 218 Mich.App. 406, 413-414, 554 N.W.2d 577 (1996). Our review of the record reveals that there was sufficient evidence upon which the prosecution could reasonably rely in charging defendant under MCL 750.81d.
Affirmed.
JOEL P. HOEKSTRA and PETER D. O'CONNELL, JJ., concur.