# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CHRISTOPHER LEHMAN TADGERSON,

       Defendant-Appellant.

UNPUBLISHED
October 13, 2016

No. 327187
Chippewa Circuit Court
LC No. 14-001581-FH

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of resisting and obstructing a law enforcement officer causing injury, MCL 750.81d(2). According to the judgment of sentence, defendant was sentenced as a fourth-habitual offender, MCL 769.12, to 4 to 15 years' imprisonment for the conviction. We affirm defendant's conviction but remand for the ministerial task of correcting the judgment of sentence relative to the payment of a probation supervision fee and defendant's minimum sentence.

Defendant's conviction arose out of a physical altercation that he had with another inmate named Hammonds at the Chippewa County Correctional Facility. The prosecution offered testimony and video footage establishing that when defendant and Hammonds did not heed commands by corrections officers to stop fighting, Chippewa County Sheriff's Department Deputy Officer Thomas Lawlor and Correctional Supervisor Corporal Ashely Reid pulled defendant and Hammonds apart. The video shows that defendant continuously resisted Lawlor as he was being escorted out of the cell. Defendant testified that he was being "choked out" during the fight and that he was unable to hear Lawlor's commands. There was no video footage of what occurred at the cell door, but Lawlor testified that defendant "made a big lunge at, to get out of my grasp," and that when defendant did so, Lawlor felt a "pop, pull type feeling" in his back. Defendant maintained that he thought another inmate had grabbed him. Defendant claimed that he stopped resisting once he realized he was being held by Lawlor. Lawlor testified that he sustained a ruptured disc in his lower back for which he continues to see a specialist.

Defendant argues that his conviction is not supported by sufficient evidence. Defendant admits that he resisted Lawlor and does not dispute that Lawlor suffered a bodily injury requiring medical attention as a result. He argues, however, that the prosecution failed to prove beyond a reasonable doubt that he knew or had reason to know that the person he was resisting was an

-1-

officer. We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

A defendant is guilty of resisting and obstructing an officer causing injury if he or she "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care . . . ." MCL 750.81d(2). As used in the statute, "person" includes "[a] sheriff or deputy sheriff." MCL 750.81d(7)(b)(*v*).

The phrase "has reason to know" "is established with something less than actual knowledge," and "requires the fact-finder to engage in an analysis to determine whether the facts and circumstances of the case indicate that when resisting, defendant had reasonable cause to believe the person he was assaulting was performing his or her duties." *People v Nichols*, 262 Mich App 408, 414; 686 NW2d 502 (2004) (internal quotation marks omitted).

The prosecution presented sufficient evidence for a rational jury to find that, under the facts and circumstances, defendant had reasonable cause to believe that he was resisting an officer. Lawlor and Reid testified to Lawlor commanding defendant and Hammonds to stop fighting. In the video shown to the jury, it appears that as defendant was pulled away from the altercation, he would have seen Reid, wearing a black uniform, holding Hammonds. Even if defendant did not know who Reid was, it is reasonable to conclude that a prison inmate would have identified the uniform as one worn by a corrections officer. The video also shows defendant grabbing a pillar and turning his body into Lawlor in an apparent attempt to return to Hammonds. The jury was free to infer that defendant would have seen Lawlor's black uniform at that time. See *People v Kosik*, 303 Mich App 146, 150-151; 841 NW2d 906 (2013) ("It is for the trier of fact, rather than this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight to be afforded to the inferences."). Moreover, testimony established that there was a third corrections officer stationed at the open cell door when defendant made his final lunge that caused Lawlor's injury. And because actual knowledge is not required under MCL 750.81d(2), *Nichols*, 262 Mich App at 414, the jury did not necessarily have to find defendant's testimony, that he believed he was being grabbed by another inmate, not credible in order to convict him. In sum, defendant's conviction is supported by the evidence presented at trial.

Next, defendant contends, and the prosecutor concedes, that he was improperly ordered to pay a probation supervision fee. MCL 771.3(1)(d) provides that a defendant "shall pay a probation supervision fee" as a condition of a sentence of probation when sentenced in circuit court. Because defendant was not sentenced to probation, the trial court lacked the statutory authority to impose a probation supervision fee. Accordingly, we remand for the ministerial task of correcting the judgment of sentence so as to delete the provision ordering defendant to pay a probation supervision fee.

Next, defendant argues that the trial court erred in ordering him to pay a fee for his court-appointed attorney without first assessing his ability to pay. Under MCL 769.1k(1)(b)(*iv*), if a defendant is found guilty after trial, the court may impose "[t]he expenses of providing legal assistance to the defendant." MCL 769.1*l* provides the procedure for collecting court-imposed costs from prisoners and states in relevant part as follows:

> If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in section 1k and the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00 . . . .

In *People v Jackson*, 483 Mich 271, 290; 769 NW2d 630 (2009), the Michigan Supreme Court held that defendants do not have a constitutional right to an ability-to-pay assessment when the trial court imposes a fee for a court-appointed attorney. However, "whenever a trial court attempts to enforce its imposition of a fee for a court-appointed attorney under MCL 769.1k, the defendant must be advised of this enforcement action and be given an opportunity to contest the enforcement on the basis of his indigency." *Id*. at 292 (emphasis omitted). Thus, the Court concluded that "trial courts should not entertain defendants' ability-to-pay-based challenges to the imposition of fees until enforcement of that imposition has begun." *Id*. Accordingly, the trial court did not err in *imposing* an attorney fee on defendant in the judgment of sentence without first determining his ability to pay.

However, the lower court record contains a remittance order directing the Department of Corrections to collect from defendant all of the fees and costs imposed by the trial court, which totaled $1,048, including the assessment of attorney fees, under the formula set forth in MCL 769.1*l*, as quoted above. And the *Jackson* Court observed that perfunctory entry of a remittance order under MCL 769.1*l* "is an *enforcement* of the fee without an ability-to-pay assessment." *Jackson*, 483 Mich at 294 (emphasis added). But our Supreme Court additionally ruled as follows with respect to a remittance order entered pursuant to MCL 769.1*l*:

> [W]e decline to hold that this enforcement procedure is unconstitutional, because the statute's monetary calculations necessarily conduct a preliminary, general ability-to-pay assessment before the prisoner's funds are taken.
>
> The ability-to-pay analysis should not be confused with the underlying constitutional tenet; it is merely a procedure used to ensure compliance with the

constitutional precept that no indigent defendant must be forced to pay. In other words, as long as it does not require indigent defendants to pay a fee, a procedure that enforces the fee is not unconstitutional simply because it does not require an ability-to-pay analysis. Indeed, the true issue is always indigency, no matter what test is used to evaluate the issue. And application of § 1*l's* calculative procedure necessarily only applies to prisoners who have an apparent ability to pay.

MCL 769.1*l* inherently calculates a prisoner's general ability to pay and, in effect, creates a statutory presumption of nonindigency. The provision only allows the garnishment of a prisoner's account if the balance exceeds $50. Although this amount would be insufficient to sustain a defendant living among the general populace, it is uncontested that a prisoner's "living expenses" are nil, as the prisoner is clothed, sheltered, fed, and has all his medical needs provided by the state. The funds left to the prisoner on a monthly basis are more than adequate to cover the prisoner's other minimal expenses and obligations without causing manifest hardship. Thus, we conclude that § 1*l's* application makes a legitimate presumption that the prisoner is not indigent.

We acknowledge that one's indigency is an individualized assessment and that § 1*l's* presumption does not result from a full individualized analysis of a prisoner's indigency. Accordingly, if a prisoner believes that his unique individual financial circumstances rebut § 1*l's* presumption of nonindigency, *he may petition the court to reduce or eliminate the amount that the remittance order requires him to pay*. However, because we adjudge a prisoner's indigency at the time of enforcement on the basis of manifest hardship and because a prisoner is being provided all significant life necessities by the state, we caution that the imprisoned defendant bears a heavy burden of establishing his extraordinary financial circumstances. . . . [W]hen reviewing a prisoner's claim, lower courts must receive the prisoner's petition and any proofs of his unique and extraordinary financial circumstances. Further, the lower courts should only hold that a prisoner's individual circumstances warrant amending or reducing the remittance order when, in its discretion, it determines that enforcement would work a manifest hardship on the prisoner or his immediate family. The trial courts are under no obligation to hold any formal proceedings. They are only required to amend the remittance order when § 1*l's* presumption of nonindigency is rebutted with evidence that enforcement would impose a manifest hardship on the prisoner or his immediate family. . . .

* * *

In this case, the trial court did not err by imposing the fee for his court-appointed attorney without conducting an ability-to-pay analysis. Further, it did not err by issuing the remittance order under MCL 769.1*l* because defendant is presumed to be nonindigent if his prisoner account is only reduced by 50 percent of the amount over $50. However, if he contests his ability to pay that amount, he may ask the trial court to amend or revoke the remittance order, at which point the trial court must decide whether defendant's claim of extraordinary financial

-4-

circumstances rebuts the statutory presumption of his nonindigency. [*Jackson*, 483 Mich at 294-299 (emphasis added; footnotes omitted).]

Accordingly, the trial court here did not err by issuing the remittance order under MCL 769.1*l*, given that defendant is presumed to be nonindigent, and defendant never petitioned the trial court to reduce or eliminate the amount that the remittance order requires him to pay. In light of defendant's failure to contest the remittance order, we have no ruling to review.

As a final matter, we note that at defendant's sentencing hearing, the trial court imposed a minimum prison sentence of four years and ten months, which was the recommended minimum sentence set forth in the PSIR, but the judgment of sentence provides that defendant was sentenced to a minimum of four years' imprisonment. In their briefs, both parties refer to defendant being sentenced to a minimum prison term of four years and ten months. On remand, the judgment of sentence is to be corrected to show that defendant's minimum prison sentence is four years and ten months.

Affirmed and remanded for the ministerial task of correcting the judgment of sentence so as to delete the provision ordering defendant to pay a probation supervision fee and to change defendant's minimum term of imprisonment to four years and ten months. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Amy Ronayne Krause