*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JESSE LEE RATCLIFFE,

Defendant-Appellant.

UNPUBLISHED
October 23, 2025
11:36 AM

No. 363490
Wexford Circuit Court
LC No. 2021-013183-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JESSE LEE RATCLIFFE,

Defendant-Appellant.

No. 363492
Missaukee Circuit Court
LC No. 2022-003304-FH

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

After two separate jury trials, defendant is appealing his convictions and sentencings for offenses relating to a truck theft and a traffic stop escape. In Docket No. 363490, defendant appeals by right his convictions of unlawfully driving away a motor vehicle, MCL 750.413, and assault and battery, MCL 750.81(1), as a third-offense habitual offender, MCL 769.11 (collectively, the driving-away offenses), and his related sentence. In Docket No. 363492, defendant appeals by right his convictions of felonious assault, MCL 750.82(1), five counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and malicious destruction of property, MCL 750.377b (collectively, the felonious-assault convictions), and his related sentence. We affirm defendant's convictions and sentences.

## I. BACKGROUND

-1-

According to the victim, at about 7:30 a.m. or 8:00 a.m., he saw defendant standing at his front door. The victim had seen defendant before because defendant's mother lived in the same neighborhood as the victim. The victim assumed that defendant had car troubles, but, when he opened the door, defendant grabbed his arm and tried to pull him outside. At that time, the victim's keys were in his hand, but he lost them during the scuffle. According to the victim, defendant was "talking gibberish," and, after demanding that the victim fill the car of defendant's mother with gasoline, defendant began yelling for his wife to grab a Bible. At that point, the victim realized that there were other people nearby and another vehicle present. The victim went back into his home, locked the door, and retrieved his gun. When he came back out of his house, he saw his truck driving away and being followed by a car down the road.

Defendant's testimony was starkly different. He testified that he had gone to the victim's house to borrow one of his trucks to move drywall and a heating duct. According to defendant, the victim handed the keys to defendant and warned defendant not to let anything happen to his truck. Defendant in the truck and his wife in the car both drove to his mother's house. Then defendant drove the truck to his grandmother's house to pick her up.

The victim testified that he called the police and, about 15 minutes after watching his truck leave, the police arrived. According to Wexford County Sheriff's Deputy Matthew Howell, when he arrived at the victim's house, the victim told him that defendant had come to his home, struggled with the victim, and then taken the keys and truck without permission. Deputy Howell provided a description of the truck to other agencies. The victim testified that he had a doorbell camera and surveillance cameras, and Deputy Howell testified that the victim showed him a clip of the incident on his phone. In one of the clips that was played for the jury, a woman walked around the back of the victim's truck and appeared to stand beside defendant. Deputy Howell testified that he received four video clips from the victim, but he did not recall seeing a fight take place in any of the clips. When Deputy Howell followed up, the victim stated that he did not have further videos. At trial, the victim testified that he had turned over all of his videos.

Ronald Gwizdala, deputy with the Missaukee County Sheriff's Department on the day of the incident, testified that he received a description of a stolen vehicle and spotted it in the early afternoon. At that time, Deputy Gwizdala was wearing a yellow shirt that identified him as a sheriff and was driving a fully marked sheriff's department's pickup truck. Missaukee County Sheriff's Department Deputy Jason Frolenko testified that, while on road-patrol duty, he received a be-on-the-lookout bulletin for a black Chevrolet pickup truck that had been reported stolen. At that time, he was in a marked patrol vehicle and wearing his sheriff's department uniform. Deputy Frolenko's patrol-car video showed Deputy Frolenko passing Deputy Gwizdala's truck and pulling behind the victim's black pickup truck. Deputy Frolenko could be heard stating that he had activated his lights but the truck was not stopping. After about seven seconds, Deputy Frolenko activated his siren, and about six seconds later, the brake lights on defendant's vehicle came on.

The video showed Deputy Gwizdala's vehicle parking at an angle in front of defendant's vehicle, and officers subsequently yelling at defendant several times to show his hands, put his hands out the window, and open the door. At trial, three deputies testified that they told defendant to show his hands or leave the vehicle. In the video, the truck that defendant was driving began moving forward into a shallow ditch, and Deputy Gwizdala pulled his vehicle beside the truck. Deputy Gwizdala testified that he pulled his vehicle up so that defendant would not have a path to

the road because it was a dangerous situation and it seemed that defendant could be very desperate. In the video, the truck that defendant was driving could be seen ramming Deputy Gwizdala's vehicle, striking it so hard that two of defendant's driver's side tires left the ground and the front tire almost went onto the hood of Deputy Gwizdala's truck. Deputy Gwizdala testified that defendant's vehicle hit his vehicle with so much force that it nearly rolled both vehicles.

In the video, defendant's vehicle stopped, backed up, and rammed Deputy Gwizdala's vehicle a second time. About two seconds after defendant's vehicle rammed Deputy Gwizdala's vehicle again, it appears that the back-passenger door opened. Deputy Frolenko testified that, at one point, defendant's grandmother attempted to leave the truck, but defendant tried to pull her back in. Defendant and his wife then held onto each other inside the truck and refused to exit the vehicle. Ultimately, defendant was removed from the truck and arrested.

Defendant now appeals his convictions and sentences.

## II. ANALYSIS

### A. RIGHT TO PRESENT A DEFENSE

Defendant begins his appeal by arguing that the trial court violated his right to due process of law. This Court reviews de novo whether a defendant's right to due process has been violated. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). Under the United States and Michigan Constitutions, a criminal defendant has the due-process right to present a defense. *Id*. at 198; *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). A defendant also has due-process rights to confront and cross-examine witnesses. *People v Breeding*, 284 Mich App 471, 484; 772 NW2d 810 (2009). The right to present a defense, however, is not absolute. *Solloway*, 316 Mich App at 198. The right is subject to reasonable restrictions, including rules of evidence, as long as those rules are not arbitrary or disproportionate. *People v Parrott*, 335 Mich App 648, 658; 968 NW2d 548 (2021). This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings and reviews de novo questions of law concerning the admission of evidence. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

### 1. CROSS-EXAMINING THE VICTIM

In the driving-away case, defendant argues that the trial court deprived him of his rights to present a defense and confront the witnesses by (a) preventing defense counsel from cross-examining the victim regarding possibly missing portions of the surveillance videos, and (b) excluding evidence that the victim had motives to fabricate his testimony.

Defendant's first argument concerns the court's limitation on his cross-examination of the victim regarding the completeness of the surveillance videos that he provided to Deputy Howell. "Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant." *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020). With that said, the record does not support defendant's argument that he was prevented from cross-examining the victim regarding the surveillance videos.

Defense counsel questioned the victim how long it took him to send the surveillance-video clips, and the victim responded that he sent them about one week later. After defense counsel asked the victim why it took him nine days to e-mail the video clips to Deputy Howell, the prosecutor objected that the question was not relevant. Defense counsel responded, and the trial court sustained the objection on the basis that the amount of time it took the victim to e-mail the videos to Deputy Howell was not relevant. The victim was subsequently questioned regarding whether he had turned over all of his surveillance-video footage, and he testified that he had turned over all of his videos. In closing arguments, defense counsel asked the jury to consider why it would take someone so long to provide four short surveillance-video clips.

Thus, the record confirms that defense counsel was not prevented from cross-examining the victim to support the defense that the victim had provided belated or incomplete surveillance footage. The only question that defense counsel was prevented from asking was why it had taken the victim nine days to turn over the videos after the victim had testified that it had taken him about a week to do so. On this point, the record further confirms that defense counsel failed to rebut the prosecutor's objection based on relevancy. In response to the objection, defense counsel asserted that "credibility is always an issue in a case" and "we have to figure out why it took so long to do something."

The former is a mere restatement of a generic principle of law unconnected with any rationale for this specific question, and the latter is a conclusory assertion that begs the very question—how is the "why" relevant? Had defense counsel offered a better explanation of relevancy, the question might have been permitted. But, given the explanation offered, the trial court did not abuse its discretion in sustaining the objection.

As to his second argument, defendant asserts that the trial court prevented defense counsel from questioning the victim as to the value of the damage to the truck, and this testimony would have helped show that the desire to receive restitution was the victim's true motive for reporting the truck as stolen. This argument, however, suffers from a fatal timing issue; namely, the damage to the truck (and hence the event giving rise to the restitution here) did not occur until well after the victim reported the truck as stolen. When he reported the truck as stolen, the victim could not have known that, approximately 15 minutes into the future, his truck would be damaged and, as a result, he might be entitled to restitution for that damage. The trial court did not err in ruling that the victim's statements to the police were inadmissible unless the motive to fabricate arose before the victim made the statements.

## 2. LAWFULNESS OF THE ARREST

Defendant next argues that the trial court violated his due-process right to present a defense in the felonious-assault case by preventing him from questioning the officers about the reasonableness of their actions during the traffic stop. MCL 750.81d(1) provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony." A defendant knows if an officer is performing duties if he has actual knowledge; he has reason to know if he "should have had knowledge on the basis of the facts and circumstances of the case." *People v Nichols*, 262 Mich App 408, 413-414; 686 NW2d 502 (2004). For the purposes of this statute, " 'obstruct' includes . . . a knowing failure to comply with a lawful command." MCL

750.81d(7)(a). Performing duties means "engaging in conduct authorized by law or required by legal obligation," and so "the offense of resisting and obstructing requires that an officer's actions are *lawful*." *People v Moreno*, 491 Mich 38, 56-57; 814 NW2d 624 (2012) (emphasis added).

Defense counsel did not seek to admit evidence that the officers' arrest was unlawful; rather, counsel sought to admit evidence regarding the *reasonableness* of the officers' actions. Defense counsel attempted to introduce evidence regarding Deputy Frolenko's training, and when the prosecution objected, defense counsel responded, "What I'm trying to establish, your honor, is that this stop was inappropriate. It doesn't follow the best practices of law enforcement." Defense counsel indicated that defendant intended to argue that his failure to leave the vehicle was self-defense and that the training was relevant "to show what the environment was at the traffic stop and how that impacted" defendant. The court ultimately sustained the objection on the basis that the evidence was not being offered to show that Deputy Frolenko's techniques were unlawful.

The trial court did not err. The decision in *Moreno* concerns only the lawfulness of an arrest, not the reasonableness of it. Regardless, the arrest in this case was lawful. A police officer may lawfully arrest a person without a warrant if the officer has received a bulletin that gives the officer reason to suspect that the person committed a felony:

> (1) A peace officer, without a warrant, may arrest a person in any of the following situations:
>
> * * *
>
> (f) The peace officer has received positive information broadcast from a recognized police or other governmental radio station, or teletype, that affords the peace officer reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it. [MCL 764.15.]

Two of the deputies who testified had heard a description of a stolen vehicle matching that which defendant drove, and the third had heard that a reportedly stolen vehicle had rammed a patrol vehicle. The officers had reasonable cause and lawfully arrested defendant.

Defense counsel wanted to introduce evidence about the training to show the environment at the traffic stop and how defendant perceived it. Defendant's subjective view of the arrest may be relevant to whether defendant knew the officers were performing their duties but it is not relevant to whether the arrest was lawful, which is objectively either lawful or unlawful. The specifics of training are not relevant to whether defendant knew the officers were performing their duties when he was not likely aware of the training procedures during the traffic stop. And whether defendant should have known the police officers were performing their duties, the testimony and video evidence of what actually happened were relevant, not the hypotheticals of training. Because the evidence that defendant sought to admit did not concern the lawfulness of the officers' conduct, it could not have supported a self-defense instruction. Therefore, the trial court did not err by excluding it.

In a related argument, defendant argues that the trial court did not properly instruct the jury regarding his right to resist an unlawful arrest. A criminal defendant is entitled to a properly instructed jury, and the instructions must address a defense theory if there is evidence to support it. *People v Czuprynski*, 325 Mich App 449, 456; 926 NW2d 282 (2018). In this case, the trial court instructed the jury that, to find that defendant had resisted arrest, it had to find that an officer had given defendant a lawful command. It then instructed the jury consistent with MCL 764.15. The trial court's instructions accurately reflected the law and sufficiently protected defendant's rights.

### 3. JUDICIAL MISCONDUCT

In his next claim for relief, defendant argues that the trial court committed judicial misconduct in the driving-away case by admonishing counsel and threatening him with contempt if counsel raised any more objections concerning the trial court's evidentiary rulings. A trial court is entitled to control the proceedings in the courtroom but may not violate a defendant's constitutional rights when doing so. *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016). A trial court pierces the veil of judicial impartiality and deprives the defendant of the right to a fair trial "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). Among other factors, this Court should consider the nature of the misconduct, its scope in the context of the length and complexity of the trial, the judge's tone and demeanor, and whether the trial court's conduct was directed more at one side than another. *Id*. at 172. Judicial misconduct may include "belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173.

We have reviewed defendant's assertions that the trial court expressed undue skepticism of defense counsel's positions when issuing evidentiary rulings in the presence of the jury. Most of defendant's allegations concern the trial court's rulings on the prosecution's objections, and all of the trial court's statements on the record interrupted counsel only to clarify their positions. The court interrupted both defense counsel and the prosecutor. When the jury was present, the trial court did not express belief of any witnesses or express views to the jury. The trial court's statements and rulings did not show hostility, bias, or incredulity, and the trial court sent the jury to the jury room when lengthy colloquies were necessary. Although the trial court criticized defense counsel during those colloquies and provided him with strategic advice during one exchange, it did so outside the presence of the jury.

The only harshly toned rulings that the trial made in the jury's presence related to defense counsel's attempts to circumvent the trial court's prior rulings. First, defense counsel attempted to admit testimony by defendant's wife about her and defendant's activities during the prior two years, and the trial court ruled that the question was irrelevant. During an offer of proof, defendant's wife stated that they had been excavating the cottage of defendant's mother. Following the wife's testimony, the trial court took questions from the jury. It asked two questions, but the trial court ruled that one could not be asked under the rules of evidence. When the trial court asked whether counsel had any follow-up questions, defense counsel stated that the juror's unasked question would have been answered by his offer of proof:

THE COURT. Seeing none, [prosecutor], any questions based upon those?

[THE PROSECUTOR]. No, your Honor.

THE COURT. [Defense counsel]?

[DEFENSE COUNSEL]. Just that I would like to state for the record that what we discussed in the offer of proof would be the response to the juror's questions. Thank you.

THE COURT. So anyways, after I've already made a ruling off the record and on the record, you want to stand up and make that argument to the Court, again?

[DEFENSE COUNSEL]. Your Honor I have to preserve the record.

THE COURT. You've preserved it already three times. You're that close to contempt. Sit down.

Later, during closing arguments, defense counsel attempted to draw the jury's attention to counsel's inability to ask the victim about his motives:

[DEFENSE COUNSEL]. . . . Of course, I'm not allowed to talk about the motive. I wasn't allowed to ask. Of course, you wanted to know, but I think it's important to know that you will see that we, the defense never objected—

THE COURT. Excuse me, are you talking about what you were not allowed to ask based upon a ruling from the Court?

[DEFENSE COUNSEL]. I am, your Honor.

THE COURT. Don't do that. You may continue your argument.

Although the tone of the trial's rulings established frustration with defense counsel, when considered in context and in light of the other judicial-misconduct factors, it is not reasonably likely that the judge's conduct deprived defendant of a fair trial by improperly influencing the jury.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel provided ineffective assistance in the driving-away case by failing to challenge Deputy Howell's hearsay testimony regarding what the victim told him after he arrived at the victim's house. As an initial matter, this issue is unpreserved. It is well-established that a defendant must move the trial court for a new trial or evidentiary hearing to preserve a claim that counsel provided ineffective assistance. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). If a defendant has not preserved an ineffective-assistance claim, our review is limited to mistakes apparent from the record. *Johnson*, 315 Mich App at 174. To support an ineffective-assistance claim, "defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been

different." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020). Defense counsel is not ineffective for failing to make futile objections. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

Deputy Howell testified that, when he arrived at the victim's house, the victim told him that defendant had come to his house, there had been a struggle, and defendant had taken the victim's keys and driven the truck off without his permission. Deputy Howell testified that he then provided a description of the truck to other agencies because the alleged crime had occurred only 10 to 15 minutes before, he was concerned that the vehicle had been taken by force or an assault, and he expedited the description because it was likely that the truck was still in the area. Deputy Howell did not offer an opinion regarding whether he believed the victim's account. Rather, the deputy offered the victim's statement to support why he issued an immediate bulletin, and, therefore, his recitation of the victim's statement was not hearsay. *Chambers*, 277 Mich App at 11. Accordingly, defense counsel's decision not to challenge Deputy Howell's testimony was objectively reasonable because either objection would have been futile.

## C. SENTENCING CHALLENGES

We now turn to defendant's challenges to his sentences in both cases. A criminal defendant may challenge the proportionality of any sentence, and this Court reviews the sentence for reasonableness. *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7. A sentencing within the guidelines' recommended range is presumptively proportionate. *Id*. at ___; slip op at 7. This Court reviews for clear error the trial court's factual findings regarding the sentencing-guidelines variables. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *People v Swenor*, 336 Mich App 550, 563-564; 971 NW2d 33 (2021). This Court reviews de novo whether the facts found are sufficient to satisfy a statute's scoring conditions. *Hardy*, 494 Mich at 438.

### 1. OV 1

Defendant argues that, for his felonious-assault conviction, he was improperly assessed 10 points for OV 1 (aggravated use of a weapon) because he did not use the truck as a weapon. Defendant did not preserve this error because he did not raise it during his sentencing hearing, in a motion for resentencing, or in a motion for remand. *Ventour*, ___ Mich App at ___; slip op at 9. Accordingly, we review this issue for plain error affecting defendant's substantial rights. *Id*. at ___; slip op at 9. To be plain, an error must be clear or obvious. *Id*. at ___; slip op at 9. An error affected the defendant's substantial rights when it affected the outcome of the lower-court proceedings. *Id*. at ___; slip op at 9.

The trial court must assess 10 points for OV 1 if "[t]he victim was touched by any other type of weapon." MCL 777.31(1)(d). A weapon is any object employed to inflict physical injury on an adversary. *People v Lange*, 251 Mich App 247, 256-257; 650 NW2d 691 (2002). Contrary to defendant's argument, the record does not establish that defendant was merely attempting to escape in his vehicle. The video from Deputy Frolenko's patrol car shows defendant using his vehicle as a ramming weapon against Deputy Gwizdala's vehicle. The first time defendant rammed Deputy Gwizdala's F-150, his front driver's side tire traveled almost onto the hood of the

F-150. Defendant then reversed and accelerated again, and the second time defendant rammed the deputy's vehicle, the engine revved loudly for seconds after the vehicle connected. The court did not err—much less plainly err—by finding that defendant used his truck as a weapon.

## 2. OV 9

Defendant also argues that the court improperly assessed 10 points for OV 9 (number of victims placed in danger) when determining the guidelines for his felonious-assault conviction. The trial court must assess 10 points for OV 9 when "[t]here were 2 to 9 victims who were placed in danger of physical injury." MCL 777.39(1)(c). The trial court must "[c]ount each person who was placed in danger of physical injury . . . as a victim." MCL 777.39(2)(a). A victim includes a person who was nearby when the crime occurred, even if the person did not actually suffer harm. *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004).

In this case, the trial court opined that defendant's two passengers had been placed in danger by the degree to which defendant had rammed the police vehicle, explaining that the tires of the truck left the ground, and it had been concerned that the truck could flip and roll with the passengers inside. A review of Deputy Frolenko's patrol-car video establishes that the trial court's finding was not clearly erroneous, and, therefore, the trial court did not err by assessing 10 points for OV 9.

## 3. OV 14

Next, defendant argues that, for his driving-away conviction, he was improperly assessed 10 points for OV 14 (leader in a multiple-offender situation). The trial court must score OV 14 when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). A multiple-offender situation does not require multiple people to be charged with a crime so long as more than one person is violating the law while part of a larger group. *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017). A trial court should consider whether the defendant acted first, gave directions, or was coordinating the offense. *Id*.

At the sentencing hearing, defendant challenged this assessment on the basis that he was not the leader of the offense. The trial court denied the challenge, finding that there were two people on the victim's property, that defendant's wife stood next to him, and that they drove away in the two vehicles. The trial court reasoned that they had presented a joint show of force. Further, defendant's wife had testified that they had gone to the property together, and they were later found in the same vehicle.

The record supports these findings. Defendant's wife testified that she walked to the back of the victim's truck when defendant knocked on the door and that she watched what was happening. The victim testified that, during the confrontation, defendant began yelling at his wife to get a Bible, and she got out of a car. In the surveillance videos, while defendant was approaching the victim, defendant's wife began approaching from around the tailgate of the victim's truck and appears to stand next to defendant. Both defendant and his wife testified that defendant told his wife to take the car back to his mother's home. The victim testified that the vehicles left together. Accordingly, the trial court did not clearly err when it found that defendant and his wife presented a joint show of force and that defendant was directing or coordinating the offense.

### 4. OV 19

Finally, defendant argues that, for his driving-away conviction, he was improperly assessed 15 points for OV 19 (interference with the administration of justice) because the trial court did not expressly find that defendant used force while attempting to flee from the police. This issue is only partially preserved. A challenge based on one ground is not sufficient to preserve an appellate challenge based on another ground. *Swenor*, 336 Mich App at 562. In this case, defendant challenged the scoring of OV 19 on the basis that the points were being assessed because of his actions in the second case. This issue is not preserved because defendant now argues that fewer than 15 points should be assessed because he did not use force when fleeing the police.

The trial court should score OV 19 if the defendant interfered with the administration of justice. MCL 777.49(c). This offense variable provides in pertinent part:

> (b) The offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services............................................................................................15 points
>
> (c) The offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order ......................................................................................10 points

When scoring OV 19, it is appropriate for the trial court to consider events that occur after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). "The trial court may consider all the record evidence when sentencing, including the contents of a presentence investigation report." *People v Armstrong*, 305 Mich App 230, 245; 851 NW2d 856 (2014).

The trial court noted that fleeing from the police constituted interference with the administration of justice and stated that it could consider the conduct that occurred after defendant's offense when scoring OV 19. Although the trial court did not expressly refer to defendant's vehicle striking Deputy Frolenko's vehicle, that information was contained within the presentence investigation report, and it is clear from the record that this was the conduct on which the trial court relied. The trial court's failure to articulate with more specificity that defendant used force while attempting to flee from the police was not a clear or obvious error. Further, any error did not affect defendant's substantial rights because, considering the trial court's prior finding that defendant struck the police vehicle so forcefully that it put his passengers in danger, any failure to rearticulate defendant's use of force related to OV 19 did not affect the outcome of the proceedings.

Affirmed.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock